BERNARD LAMOUREUX[1] vs. SUPERINTENDENT, MASSACHUSETTS
CORRECTIONAL INSTITUTION, WALPOLE.

Norfolk. March 10, 1983. — November 10, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Imprisonment. Due Process of Law*, Prison disciplinary proceeding.

The record of a prison discipline proceeding against an inmate accused of
    serious offenses within a correctional institution, which resulted in his
    forfeiture of statutory good time credit, did not provide the safeguards
    required by Federal due process principles governing the disciplinary
    board's use of information furnished by informants. [413-416]
Procedures followed in the case of a prisoner subjected to administrative
    segregation did not infringe whatever State-created liberty interest the
    prisoner may have had by reason of Department of Correction regula-
    tions governing such segregation. [416-418]

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 4, 1982.

The case was heard by *Mitchell*, J.

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

The case was submitted on briefs.

*Bernard Lamoureux*, pro se.

*John W. Bishop, Jr.*, Special Assistant Attorney General,
& *Herbert C. Hanson* for the defendant.

LIACOS, J.   This case, as with three other cases decided by
us today,[2] questions the constitutionality of certain State reg-

[1] An action brought with Lamoureux's action by Ronald A. Peltier was
voluntarily dismissed.

[2] See *Nelson* v. *Commissioner of Correction, ante* 379 (1983); *Real* v.
*Superintendent, Mass. Correctional Inst., Walpole, ante* 399 (1983); *Cas-
sesso* v. *Commissioner of Correction, post* 419 (1983). See also *Royce* v.
*Commissioner of Correction, post* 425 (1983), raising an issue as to the ef-
fect of a failure to comply with State correctional regulations.

ulations governing the administration of State prisons. The plaintiff, Lamoureux, filed a pro se petition for a writ of habeas corpus,[3] contending that he was denied the protection of due process of law in a disciplinary hearing in which the disciplinary board (board) of the Department of Correction relied on informant information in finding the plaintiff guilty of the alleged misconduct.[4] The plaintiff also contends that administrative segregation involves a State-created liberty interest protected by the due process clause of the Fourteenth Amendment to the United States Constitution, and that the State regulations concerning administrative segregation do not satisfy due process requirements. Lamoureux sought release from administrative segregation and the removal of sanctions imposed by the board.

After a hearing on the merits, a Superior Court judge in Norfolk County found the regulations involving the use of informant information to be inadequate under Federal law. Relying on the due process standard set out in *Helms* v. *Hewitt*, 655 F.2d 487 (3d Cir. 1981), rev'd in part, 459 U.S. 460 (1983), the judge ruled that the statement summarizing the evidence relied on by the board, required by the State regulations, was so lacking as to violate the plaintiff's due

---

[3] The trial judge treated the petition for a writ of habeas corpus as a complaint for declaratory judgment. See *Pina* v. *Superintendent, Mass. Correctional Inst., Walpole*, 376 Mass. 659, 666 (1978); *Nelson* v. *Commissioner of Correction, supra* at 386-388.

[4] All the court documents submitted by the plaintiff are handwritten and apparently drafted by the plaintiff. A handwritten pro se document is held to a less stringent standard than pleadings drafted by an attorney and is to be liberally construed. See *Real* v. *Superintendent, Mass. Correctional Inst., Walpole, supra* at 400 n.2.

While pro se complaints may be excused for demonstrating a lack of expertise and knowledge, the court will not advance legal theories neglected to be presented. Cf. *McDonald* v. *Hall*, 610 F.2d 16, 19-20 (1st Cir. 1979) (Campbell, J., dissenting); *Hurney* v. *Carver*, 602 F.2d 993, 995 (1st Cir. 1979). After carefully reading the pro se complaint, we conclude that the plaintiff only raised the issue of his due process rights protected by the United States Constitution and made no claim under the Massachusetts Constitution.

process rights. He ordered the sanctions removed, and the plaintiff returned to the general prison population.[5]

The defendant sought a stay of judgment pending appeal which was denied by the trial judge but which was granted by a Justice of the Appeals Court. We transferred the case here on our own motion.

The defendant maintains that the State regulations pertaining to the use of informant information satisfy the minimal due process requirements set forth in *Wolff* v. *McDonnell*, 418 U.S. 539 (1974). In the alternative, the defendant argues that, if the standard adopted by the judge is applicable, the summary of evidence given by the disciplinary board satisfies such a standard. Finally, the defendant contends that the judge erred in releasing the plaintiff from administrative segregation.

We conclude that the judge correctly ordered the return of the plaintiff's good time credits. For reasons discussed further in this opinion, however, we reverse the judgment and remand the case to the trial court for a declaration of the plaintiff's rights.

The facts are as follows. The plaintiff is lawfully in the custody and care of the Massachusetts Department of Correction at M.C.I., Walpole.[6] On February 13, 1982, the plaintiff was locked in his cell, pending a disciplinary investigation.[7] He was transferred a week later to the Southeastern Correctional Center at Bridgewater.

---

[5] The judge did not address the isolation sanction because the plaintiff already had served his isolation time when the hearing was conducted.

[6] The plaintiff is serving several concurrent sentences.

[7] The conditions of an inmate's incarceration are related to his location in the penal system. An inmate's placements or transfers within the penal system depend on his status or classification. The defendant and the plaintiff have done little to make clear to us the morass of statutes, rules, and regulations surrounding isolation or solitary confinement, segregation, or separate confinement (administrative and disciplinary), and transfers (administrative and punitive). See generally *Taylor* v. *Schmidt*, 380 F. Supp. 1222, 1227-1229 (W.D. Wis. 1974). See also S. Krantz, Model Rules and Regulations on Prisoners' Rights and Responsibilities 155-186 (1973). It is sufficient for the disposition of the instant case to understand that the plaintiff had been placed in "awaiting action" status.

On March 1, 1982, Correctional Officer Paul Murphy reported the plaintiff for alleged major misconduct at M.C.I., Walpole. The officer alleged that, based on his investigation and "my reliable informant information," inmate Lamoureux had participated in a planned violent takeover of M.C.I., Walpole, by manufacturing weapons at the institution foundry during the early part of February, 1982.[8] A copy of the disciplinary report was received by the plaintiff on the same day, and the plaintiff was informed of the pending disciplinary hearing.

The day before the hearing, the plaintiff was transferred, still in administrative segregation, to the Departmental Segregation Unit (D.S.U., also known as Block 10) at M.C.I., Walpole.[9] The disciplinary hearing was conducted on March 23, 1982, in accordance with 103 Code Mass. Regs. § 430.01 et seq. (1978). Lamoureux was not represented by counsel. Out of the plaintiff's presence, the board reviewed the informant information.[10] Determining the informant

---

See 103 Code Mass. Regs. § 430.19 (1978). "Awaiting action" constitutes a status in which an inmate may be placed pending a disciplinary hearing, an investigation of a possible disciplinary offense, a transfer or reclassification, or imposition of isolation time sanction when the inmate's continued presence in the general population poses a serious threat. See *id.* at § 430.19 (1). When placed in "awaiting action" status, an inmate may be confined to an area or areas designated by the superintendent. See *id.* at § 421.06 (1). The conditions which will prevail during an inmate's placement in "awaiting action" status will depend on the location of his confinement. Such confinement is administrative segregation.

[8] The plaintiff argues that, without a specific date, the notice that he received was constitutionally inadequate to enable him to prepare a defense by proving his whereabouts. Although the plaintiff tried to make this argument at the hearing, the trial judge did not consider the question of notice because lack of notice was not alleged in the petition for a writ of habeas corpus. Since the plaintiff has not cross appealed from the judgment, the question of notice is not before us.

[9] See *Libby* v. *Commissioner of Correction*, 385 Mass. 421, 423-424 (1982). We described the physical conditions inflicted on an inmate in the D.S.U. at length but concluded that isolation per se was not unconstitutional.

[10] It is unclear from the record presented to us how the informant information was presented to the board.

information to be reliable, the board found the plaintiff guilty of violating § 430.22 (14), participating in a hostage taking; § 430.22 (15), manufacturing of weapons; and § 430.22 (31), attempting to commit the offenses, aiding another to commit the offenses, and making plans to commit the offenses. In accordance with § 430.17, the board provided Lamoureux with a written summary of the evidence relied upon by it in reaching the guilty finding.[11]

The board imposed sanctions of fifteen days in isolation and forfeiture of 700 days of good time credit. It further recommended that the plaintiff be reclassified to the D.S.U. The plaintiff appealed his sanctions to the defendant, who reduced the forfeiture to 150 days of good time credit but approved the isolation time and referral to the D.S.U.

The plaintiff remained in administrative segregation in the D.S.U. from March 22 to June 29, 1982, when he was formally reclassified by the D.S.U. board for the D.S.U. in accordance with the disciplinary board's recommendation. The plaintiff presently remains in the D.S.U.

We have held in cases decided today that loss of statutory good time credits involves a State-created liberty interest that is protected by the due process clause of the Fourteenth

---

[11] Because of its importance to the disposition of the case, we reprint in its entirety the board's written summary of the evidence it relied on:

"Plea/not guilty.

"Board reviewed the informant information before the start of the hearing. The board made the determination that the informant(s) and the information are reliable and credible. Informant(s) had been used in the past, the information used proved to be reliable. The information received was given freely with no promises of inducements or rewards. No grudge motives were detected in this instance.

"Lamoureaux [sic] states he had no reason to participate in this ridiculous situation. He was scheduled to see a board to get out of here after spending 2 yrs. here.

"Murphy states he recieved [sic] information about a planned takeover. Informant(s) stated Lamoureaux [sic] along with another inmate made weapons in the institution foundry. These weapons were recovered.

"Based on the criteria of preponderance of evidence the board views clear guilt. The board deems the informant(s) as reliable. The board views Lamoureaux [sic] as willingly and actively involved in a planned insurgence and the manufacture of weapons. The seriousness of the offense warrants the sanction."

Amendment to the United States Constitution. See *Nelson* v. *Commissioner of Correction, ante* 379 (1983). Cf. *Cassesso* v. *Commissioner of Correction, post* 419 (1983). We have decided also that the State regulations governing the use of informant information in disciplinary proceedings do not provide adequate precautions to protect the accused's Federal due process rights against potential abuse of informant information. See *Nelson* v. *Commissioner of Correction, supra* at 391-396. It is not necessary to repeat our discussion. The judge properly relied on the standard set forth in *Helms* v. *Hewitt,* 655 F.2d 487 (3d Cir. 1981), and *Gomes* v. *Travisono,* 510 F.2d 537 (1st Cir. 1974). See *Nelson* v. *Commissioner of Correction, supra* at 392-396. When a disciplinary board's determination is derived from informant information, "(1) the record must contain some underlying factual information from which the [board] can reasonably conclude that the informant was credible or his information reliable; (2) the record must contain the informant's statement [written or as reported] in language that is factual rather than conclusionary and [3] must establish by its specificity that the informant spoke with personal knowledge of the matters contained in such statement." *Helms, supra* at 502, quoting *Gomes* v. *Travisono, supra* at 540; *Nelson, supra* at 394-395.

The defendant argues that the summary of evidence in the instant case satisfies the *Helms* criteria because the statement of evidence relied upon specifically stated that the informant or informants (hereinafter, "informants") had been used in the past, that the informants' information in the past had proved reliable, and that the informants had no motives or inducements.[12] Furthermore, the defendant argues that

---

[12] The defendant also attempts to distinguish *Helms* v. *Hewitt,* 655 F.2d 487 (3d Cir. 1981), rev'd in part, 459 U.S. 460 (1983), by arguing that, unlike *Helms,* the board, not the reporting officer, determined the credibility of the informant and the reliability of his information. While this may be true, the defendant has made no showing on the record how the board made such determination. We do not know if the board knew the identity of the informant, if the board interviewed the informant, if the board was presented with the informant's affidavit, or if the board cross-

the recovery of the manufactured weapons was evidence supporting the determination of reliability.

We disagree, and we conclude that the board's summary of evidence was inadequate to protect the plaintiff's Federal due process rights. It is true that, unlike the statement presented in *Nelson*, the statement in the instant case satisfies the first criterion of *Helms* by indicating why the board found the informants credible. The summary of evidence does not, however, indicate what the information was and whether the information was personally known.[13] Where cross-examination and confrontation are not available to sift out the truth, such guidelines are important to ensure that the hearing by the board was a genuine fact-finding procedure verifying the truth of wrongdoing. See *Nelson, supra* at 396. The second and third requirements go to the question of weight to be given reliable informant information. They ensure that the board's decision is based on fact and not on speculation. *Gomes* v. *Travisono, supra.*

Even where informant information has been found to be reliable, the weight to be given such information may be reduced, however, by other considerations. "For example, a

---

examined the reporting officer in camera. We do not know if there was more than one informant. See note 10, *supra*. Without some explanation of how the board made its determination, we can assume only that it adopted the reporting officer's statement of the informant's reliability.

We add that, while there may be some question whether the particular adjudication of a disciplinary board is properly here, see *Cepulonis* v. *Commissioner of Correction*, 15 Mass. App. Ct. 292 (1983), we determine the issues as before us, both parties having argued them. See *Nelson* v. *Commissioner of Correction, supra* at 388 n.12.

[13] The defendant alleges that the disciplinary report did indicate personal knowledge on the part of the informant. First, we disagree with its characterization. The language in the disciplinary report only reflected the personal opinion of the reporting officer resulting from his investigation which included informant information. Second, even if we accept the defendant's characterization, the summary of evidence does not reflect any indication that the board knew of the informant's personal knowledge.

The defendant's position would reduce the role of the disciplinary board to that of "rubber-stamping" the disciplinary report. See *Nelson, supra* at 393. We have already declined to permit such a degeneration of Federal due process rights. See *Nelson, supra* at 393-394.

weapon might be found where an informant indicates it will be, but if the area where the weapon is found is a public place, the importance of the corroboration would be diminished since the weapon could have been planted." *Kyle v. Hanberry,* 677 F.2d 1386, 1391 (11th Cir. 1982). If the location of the weapon was the single piece of information offered by a hypothetical reliable informant, then, clearly, the informant's information would be insufficient to support a guilty finding. If the information offered by a hypothetical informant is hearsay, it might have no more weight than rumor and would be an inadequate basis for decision. In a disciplinary hearing involving the use of informant information, a written record adequately specifying the basis of the board's findings will help to ensure that administrators, faced with public scrutiny, will act fairly. See *Wolff v. McDonnell,* 418 U.S. 539, 565 (1974); *Gomes* v. *Travisono, supra.*

We do not require that a full statement by the informants be set forth in the record of the proceeding and be available to the inmate, nor do we require an in camera examination of the informants. See *Kyle* v. *Hanberry, supra* at 1390. The administrators of State prisons have a legitimate concern with the inherent risk of providing too specific information which may reveal the informant's identity. See *Nelson, supra* at 391. Nevertheless, Federal due process requires regulations prescribing procedures that accommodate the need for fairness in disciplinary proceedings, as well as the interest in prison security. Cf. *Wolff* v. *McDonnell, supra* at 556.

Having agreed with the judge that the statement provided to Lamoureux was insufficient to satisfy the necessary safeguards against informant information abuse, we conclude that the hearing provided to the plaintiff abridged his due process right. The judge properly ordered the return of the plaintiff's good time credits. See *Nelson, supra* at 396.

We turn now to the defendant's contention that the judge erred in ordering the plaintiff's release from administrative segregation effectuated by the plaintiff's placement in the

D.S.U. The judge ordered the plaintiff's release from D.S.U. and his return to the general prison population six days before the plaintiff was reclassified, while the plaintiff was still administratively segregated in awaiting action status.[14] At the time the parties prepared their briefs presenting the instant case to us, and at the time the judge issued his order, they did not have the benefit of the recent opinion of the United States Supreme Court. See *Hewitt* v. *Helms,* 459 U.S. 460 (1983). Therefore, the issue whether the statutory and regulatory provisions of the Commonwealth governing intraprison transfers to effectuate administrative segregation create a State liberty interest protected by Federal due process has not been argued to us.

By the employment in the Massachusetts regulations of "explicitly mandatory language in connection with requiring specific substantive predicates," *Hewitt* v. *Helms, supra* at 472, the Massachusetts regulations, 103 Code Mass. Regs. § 421.06 (1), § 421.07, and § 430.19 (1978), appear to be similar to the Pennsylvania regulations which the Court in *Hewitt* concluded created a protected liberty interest. See *Parenti* v. *Ponte,* 565 F. Supp. 987, 988-989 (1983). Assuming, for the purposes of deciding this case, that the regulations of the Commonwealth governing administrative segregation of an inmate posing a security threat or awaiting completion of an investigation into misconduct charges create a protected liberty interest, we conclude that the procedures followed in this case were sufficient to satisfy the due process requirement of "an informal, nonadversary review of the information supporting [the plaintiff's] administrative confinement, including whatever statement respondent wished to submit, within a reasonable time after confining him to administrative segregation." *Hewitt* v. *Helms, supra* at 472. Cf. *Carlo* v. *Gunter,* 520 F.2d 1293, 1297

---

[14] The plaintiff also contends that 103 Code Mass. Regs. § 421.06 (1978), defining an awaiting action area, precludes the use of the D.S.U. as an awaiting action area by its very definition. As the trial judge did not base his decision on the violation of a regulation, the issue is not before us. Cf. *Royce* v. *Commissioner of Correction, post* 425 (1983).

(1st Cir. 1975). Where there was no Federal due process violation of a liberty interest pertaining to administrative segregation, the judge had no authority to remove the plaintiff from administrative segregation.

In so far as that portion of the declaratory relief ordered by the trial judge is incorrect, we reverse the judgment and remand the case for an entry of judgment consistent with the principles we have set forth in this opinion. The judge is also to order a new hearing before a disciplinary board, if so requested, pursuant to the limitations and suggestions set forth in *Nelson* v. *Commissioner of Correction, supra.*

*So ordered.*