FREDERICK I. PIDGE *vs.* SUPERINTENDENT, MASSACHUSETTS CORRECTIONAL INSTITUTION, CEDAR JUNCTION, & others.[1]

No. 90-P-482.

Norfolk. October 10, 1991. - January 21, 1992.

Present: DREBEN, PORADA, & LAURENCE, JJ.

*Imprisonment*, Enforcement of discipline, Access to law library. *Administrative Law*, Prison disciplinary proceeding. *Practice, Civil*, Relief in the nature of certiorari, Moot case. *Limitations, Statute of. Contempt. Civil Rights*, Availability of remedy. *Moot Question.*

On his claim against various correctional officials, a prisoner was not entitled to an adjudication of contempt with respect to prior State court judgments with which the defendants had complied [17], nor could he invoke a State court's contempt power in aid of a Federal court decree [18].

A prisoner's State law claim against various correctional officials, arising from a prison disciplinary proceeding, was barred by the sixty-day statute of limitations, G. L. c. 249, § 4, applicable to actions seeking relief in the nature of certiorari. [17-18, 18-19]

The issue of what statute of limitations applied to a prisoner's claim against various correctional officials, to the extent that the claim articulated a cause of action for damages under the Federal civil rights act, 42 U.S.C. § 1983 (1988), was to be considered by the trial judge on remand. [19]

State law aspects of a prisoner's claim arising from the conditions of his confinement in segregated or "awaiting action" status became moot when the prisoner was released to the general prison population; however, the claim remained viable to the extent it could be read as seeking equitable or declaratory relief under the Federal civil rights act, 42 U.S.C. § 1983 (1988). [19-20]

---

[1]The defendants, named in their individual as well as official capacities, are Michael T. Maloney, former superintendent, Massachusetts Correctional Institution, Cedar Junction, and, at time of suit, deputy commissioner of correction; Paul Rakiey, superintendent, Massachusetts Correctional Institution, Cedar Junction; Jeffrey Vigneaux, Bill Burke, and Michele Rogers, members of the department review board of the Department of Correction; John Bruce; Timothy Hall; John Marshall; Raymond Daigle; Eugene P. Marsolais, Jr.; George Vose, Commissioner of Correction; John Does; and Jane Does.

State law aspects of a prisoner's claim against various correctional officials, alleging that he had been denied adequate access to the law library in the prison segregation unit wherein he was confined, and that the library was inadequately equipped, were moot where the alleged deficiencies could not have caused the untimeliness of the prisoner's complaint for relief in the nature of certiorari and where the prisoner had been released to the general prison population; the claim remained viable, however, to the extent it alleged a Federal cause of action under 42 U.S.C. § 1983 (1988). [20-22]

CIVIL ACTION commenced in the Superior Court Department on October 30, 1989.

The case was considered by *Roger J. Donahue*, J., on a motion to dismiss.

*Frederick I. Pidge*, pro se.

*Michael H. Cohen* for the defendants.

LAURENCE, J. The plaintiff is a prisoner at the Massachusetts Correctional Institution at Cedar Junction. In October, 1989, he brought suit pro se in the Superior Court against various prison officials following an adverse disciplinary proceeding on April 17, 1989, and his subsequent classification to a segregated unit (DSU).[2]

The diffuse averments of the plaintiff's complaint were far from the "short and plain statement" called for by the rules, see Mass.R.Civ.P. 8(a), 365 Mass. 749 (1974), which apply equally to pro se as to other litigants, see *Mmoe* v. *Commonwealth*, 393 Mass. 617, 620 (1985). They did, however, state four identifiable claims. In count 1, the plaintiff sought an adjudication of contempt against the defendants, pursuant to G. L. c. 231A, § 5,[3] for their purported failure to comply

---

[2]The plaintiff's grievances arose out of a June, 1989, disciplinary hearing at which prison authorities found him guilty of orchestrating incidents of prison disruption and inmate assault. He has contended throughout that this guilty finding was based upon inadequately substantiated hearsay reports by anonymous inmate informants. He was represented by counsel during the prison disciplinary proceedings.

[3]General Laws c. 231A, § 5, as amended by St. 1974, c. 630, § 3, pertinently provides that: "[W]hen a decree has already been entered declaring an administrative practice or procedure as defined in section two to be illegal, and a person not a party to the original action involving said practice or procedure is adversely affected by the same or similar practice or

with the judgments in *Nelson* v. *Commissioner of Correction*, 390 Mass. 379 (1983), *Lamoureux* v. *Superintendent, Mass. Correctional Inst., Walpole*, 390 Mass. 409 (1983),[4] and *Cepulonis* v. *Fair*, 732 F.2d 1 (lst Cir. 1984).[5] In count 2, he sought declaratory relief and damages under 42 U.S.C. § 1983 (1988) for alleged denial of procedural due process in both his disciplinary and his classification hearings. In count 3, he sought declaratory relief for the supposed failure of prison officials to comply with the regulations of the Department of Public Health and the Department of Correction relating to prison conditions in the "Awaiting Action" (AA) and DSU sections of Cedar Junction, where he was placed during most of 1989 as a result of the disciplinary charges and findings. In count 4, he claimed that he was denied sufficient access to the DSU law library and that the library was inadequately equipped. That, he charged, obstructed his access to the courts in violation of his rights under the State and Federal Constitutions.

On January 30, 1990, the defendants filed a motion to dismiss, or in the alternative for summary judgment, on the grounds that the plaintiff's claims of deficiencies in procedure at his disciplinary and classification hearings were time

procedure by the same agency, said person may seek relief under this chapter by filing a petition for contempt against the agency or agent continuing said practice or procedure after the entry of said decree."

[4]In *Nelson* v. *Commissioner of Correction*, 390 Mass. at 394-396, and *Lamoureux* v. *Superintendent, Mass. Correctional Inst., Cedar Junction*, 390 Mass. at 414, the Supreme Judicial Court held that, where a disciplinary board's determination is based on informant information, the record must contain some underlying factual information from which the board can conclude that the informant was credible and his information reliable, must contain the informant's statement in language that is factual and not conclusory, and must establish that the informant spoke with personal knowledge of the matters contained in his statement. Subsequent to those decisions, the regulations governing prison disciplinary proceedings were amended to comply with these mandates. See 103 Code Mass. Regs. § 430.15(1) (1987). The plaintiff was not a party in either the *Nelson* or the *Lamoureux* case.

[5]In the *Cepulonis* case, 732 F.2d at 5-7, the Court of Appeals for the First Circuit mandated the establishment of a law library in the DSU unit at Cedar Junction.

barred and that his remaining claims were moot.[6] The Superior Court judge agreed with the defendants and dismissed the plaintiff's complaint on February 27, 1990, without hearing and without findings or rulings. On the plaintiff's appeal from the judgment of dismissal, we affirm in part and reverse in part.

The judge properly dismissed count 1. Notwithstanding the provisions of G. L. c. 231A, § 5, the plaintiff was not entitled to enforce by contempt the judgments entered in the *Nelson* and *Lamoureux* cases, *supra*. The defendants had clearly and undoubtedly obeyed those judgments, cf. *Nickerson* v. *Dowd*, 342 Mass. 462, 464 (1961), by amending their regulations governing prison disciplinary proceedings precisely as dictated by the Supreme Judicial Court, see *Nelson*, 390 Mass. at 394-396, 398, and note 4, *supra*. They had fully purged any past contempt by complete performance of the acts required by the court orders and were therefore no longer subject to a contempt petition with respect to those judgments. See *Doe* v. *Harder*, 313 F. Supp. 575 (D. Conn. 1970). Cf. *Penfield Co.* v. *Securities & Exch. Commn.*, 330 U.S. 585, 590, 593-594 (1947).

Consequently, the plaintiff's actual grievance under count 1 was the defendants' purported failure to comply with the procedures specified in 103 Code Mass. Regs. § 430.15 (1987) with respect to their reliance upon anonymous informant accusations against him. That claim attacked the defendants' conduct of the disciplinary proceedings against the plaintiff. It was, as the defendants correctly contended, barred by the applicable statute of limitations. Inmates challenging alleged improprieties in prison disciplinary proceedings under State law must proceed by way of an action in the nature of certiorari. *Murphy* v. *Superintendent, Mass. Correctional Inst., Cedar Junction*, 396 Mass. 830, 833 (1986). *McLellan* v. *Commissioner of Correction*, 29 Mass. App. Ct. 933, 934 (1990). Certiorari actions must be commenced within sixty days after the conclusion of the proceeding being

---

[6]The plaintiff was released from the segregated unit at Cedar Junction to the general population on December 21, 1989.

challenged. G. L. c. 249, § 4.[7] Failure to do so is such a "serious misstep" that such an action must be dismissed when not timely filed, even if the defendants fail to plead the statute of limitations as an affirmative defense. *McLellan* v. *Commissioner of Correction*, 29 Mass. App. Ct. at 935.

Here, the last administrative action regarding plaintiff's disciplinary sanctions occurred on June 1, 1989, when the superintendent denied the plaintiff's appeal from the disciplinary board's findings against him. The last administrative action resulting in his classification to a segregated unit based on the disciplinary proceedings occurred on June 30, 1989, when the Acting Commissioner of Correction approved the plaintiff's placement in a segregated unit for one year. The plaintiff did not file this action until two months after the expiration of the sixty-day limitations period.

Accordingly, count 1, in so far as it purported to vindicate the plaintiff's rights under State law, was belated and could not be maintained.[8] With respect to the Federal aspect of count 1 based on *Cepulonis* v. *Fair, supra*, we have no power to enforce a Federal decree by contempt sanctions as a matter of basic jurisdictional and equitable principle. Cf. *Matter of Vincent*, 408 Mass. 527, 530 (1990); G. L. c. 231A, §§ 1, 2, 5 (which together limit relief under § 5 to enforcement of judgments of *State* courts declaring practices or procedures of State, municipal, or county agencies or officials to be illegal).

We also affirm the dismissal of so much of count 2 as constituted an action in the nature of certiorari for review of administrative actions by the defendants that allegedly denied the plaintiff due process rights. Those actions included the disciplinary board's proceedings and the subsequent classification of the plaintiff by the department review board,

---

[7]Statute 1986, c. 95, reduced the statute of limitations for certiorari actions from two years to sixty days. In St. 1987, c. 198, amending G. L. c. 260, § 7, the Legislature additionally eliminated prisoners from the class of disabled persons protected against the running of statutes of limitations until the removal of the disability.

[8]Those portions of counts 2 and 4 which embraced claims based on the *Nelson* and *Lamoureux* decisions were also properly subject to dismissal.

with the approval of the superintendent and the Commissioner of Correction, to a segregated unit at Cedar Junction. For the reasons set forth in connection with count 1, the defendants were correct in their position that the plaintiff's State law claims in count 2 were time barred.

Count 2 additionally stated a cause of action for damages under the Federal civil rights act, 42 U.S.C. § 1983 (1988). On this record that claim should not have been dismissed. The three-year State statute of limitations for torts resulting in personal injury, G. L. c. 260, § 2A, appears applicable to that claim. Although the Supreme Judicial Court has not yet ruled on this issue, we are persuaded that a State cannot apply a shorter time limit, such as the sixty-day period of G. L. c. 249, § 4, to a substantive Federal right properly asserted in a State court. See *Wilson* v. *Garcia*, 471 U.S. 261 (1985); *Felder* v. *Casey*, 487 U.S. 131, 152-153 (1988); *Duffy* v. *Massachusetts Dept. of Corrections*, 746 F. Supp. 232 (D. Mass. 1990). Cf. *Brunson* v. *Wall*, 405 Mass. 446, 449 n.6 (1989). Since, however, the parties did not fully brief or argue the issue to either this court or the Superior Court, we believe that the trial judge should have the initial opportunity to consider it on an appropriate presentation.

Count 3 set forth a claim for declaratory relief under State law arising from the conditions of the plaintiff's confinement in AA and DSU status.[9] He contended that the alleged lack of showers and exercise and the shackling of prisoners without justification violated regulations of the Department of Public Health and Department of Correction, as well as the State and Federal Constitutions. It is undisputed that the plaintiff was released to the general prison population on December 21, 1989. The defendants therefore argued that his claim for declaratory relief under State law was moot. We agree. Courts need decide only actual controversies, not moot

---

[9]Neither count 3 nor the corresponding prayer for relief contained a claim for compensatory damages under State law. The prayer did generally demand punitive damages against the defendants, but the plaintiff is not entitled to such damages, even for claimed deprivation of constitutional rights, in the absence of explicit statutory authorization. See, e.g., *Santana* v. *Registrars of Voters of Worcester*, 398 Mass. 862, 867-869 (1986).

cases. See, e.g., *Boston* v. *Massachusetts Port Authy.*, 364 Mass. 639, 645 n.8 (1974); *Massachusetts Assn. of Independent Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.*, 373 Mass. 290, 292-293 (1977); *Commissioner of Correction* v. *McCabe*, 410 Mass. 847, 850-851 (1991).

The plaintiff had asserted (for the first time, on appeal) that the violations of his rights attacked in count 3 are "capable of repetition, yet evading review," and therefore present an exception to the principle of mootness, see *Karchmar* v. *Worcester*, 364 Mass. 124, 136 (1973), quoting from *Southern Pac. Terminal Co.* v. *Interstate Commerce Commn.*, 219 U.S. 498, 515 (1911); *Puckett* v. *Commissioner of Correction*, 28 Mass. App. Ct. 448, 449 n.2 (1990). Even if we exercised our discretion to address the newly-raised issue, see *Pryor* v. *Holiday Inns, Inc.*, 401 Mass. 506, 509-510 (1988), it would not profit the plaintiff. The controversy "need not evade review if parties show even minimal resoluteness in carrying on litigation (emphasis added)." *Blake* v. *Massachusetts Parole Bd.*, 369 Mass. 701, 708 (1976). That exception is consequently inapplicable here. Nor has he established anywhere in this record the "*probability*" that the same disputes will "recur between the *same* parties" (emphasis added). *Blake* v. *Massachusetts Parole Bd.*, 369 Mass. at 707; *Matter of Sturtz*, 410 Mass. 58, 59-60 (1991).

Nonetheless, we may also read the allegations of count 3 — generously, as we must in connection with a dismissal under Mass. R. Civ. P. 12(b)(6), 365 Mass. 754 (1974), see *Spence* v. *Boston Edison Co.*, 390 Mass. 604, 615 (1983); cf. *Mmoe* v. *Commonwealth*, 393 Mass. at 620 — to allege deprivation of the plaintiff's Federal constitutional rights by the defendant State officials. Those allegations appear sufficient to state a cognizable claim, for either equitable or declaratory relief, under the Federal civil rights act, 42 U.S.C. § 1983. That portion of count 3 remains viable for the reasons discussed above under count 2.

In count 4 the plaintiff claimed that the defendants had denied him adequate access to the DSU law library while he

languished in the more restrictive units of Cedar Junction and that the library available to him for brief periods was inadequately equipped. This, he alleged, obstructed his access to the courts, including his ability to file a timely appeal. The right of access to the courts by prisoners is a recognized aspect of due process, and prisoners are constitutionally entitled to either an adequate library or adequate legal assistance. *Procunier v. Martinez*, 416 U.S. 396, 419 (1974). *Bounds* v. *Smith*, 430 U.S. 817, 821, 828 (1977). It is undisputed that the plaintiff received no legal assistance from the defendants, despite his frequent requests.

The alleged inadequacies in available library resources and in his access to them could not, however, have caused the untimeliness of the plaintiff's complaint under G. L. c. 249, § 4. He in fact had legal representation throughout and for at least some time after the disciplinary proceeding. In addition, he admittedly had access to the library for at least twelve to seventeen hours during the running of the certiorari limitations period. He was, or reasonably should have been, aware of the procedural significance of an action in the nature of certiorari to a prisoner in his circumstances. His reliance during the disciplinary proceeding upon the opinion of the Supreme Judicial Court in *Nelson* v. *Commissioner of Correction, supra,* which explicitly discussed that statutory procedure, demonstrates this. 390 Mass. at 381-382, 388 n.12. The plaintiff has made no contention that the DSU library lacked relevant copies of the General Laws. Research in those volumes, prompted by knowledge of *Nelson,* would have revealed the applicability of G. L. c. 249, § 4, and its sixty-day statute of limitations in a matter of minutes, even if the plaintiff's counsel (who otherwise appeared thorough and able) did not advise him of his appellate rights.

Finally, the plaintiff did not aver any injury resulting from the inadequacies alleged in count 4 subsequent to his discharge into the general prison population in December, 1989, nor any likelihood of recurrence of the situation to his detriment. Count 4 thus was moot and subject to dismissal, ex-

cept to the extent it alleged a Federal cause of action under 42 U.S.C. § 1983, as discussed above under counts 2 and 3.

Accordingly, we vacate the judgment for the defendants on so much of counts 2, 3, and 4 as assert Federal claims under 42 U.S.C. § 1983 and remand that portion of the case to the Superior Court for further proceedings on those claims. (We, of course, express no opinion on their ultimate legal validity or deficiencies.) In all other respects we affirm the judgment for the defendants.

*So ordered.*