Sosman, J.
Plaintiff Frank Barrett, an inmate in the custody of the Department of Correction, brought the present action complaining of alleged irregularities in the conduct of a disciplinary hearing. He also complains that the disciplinary sanction imposed amounts to four years in “isolation” in violation of the limitation placed by G.L.c. 127, §40. Defendants have filed a motion to dismiss or in the alternative for summary judgment on the ground that plaintiffs complaints with respect to the disciplinary proceedings are time-barred and that, as a matter of law, the Department Disciplinary Unit to which plaintiff was sent for a total of four years is not “isolation." For the following reasons, defendants’ motion is ALLOWED.
Facts
Plaintiff Frank Barrett is an inmate presently in the custody of the Department of Correction. During the summer and fall of 1994, he was held at MCI-Shirley. On December 5, 1994, Barrett received a disciplinary report charging him with the stabbing of two inmates that had occurred on the evening of November 22, 1994. A hearing was conducted before Hearing Officer John McGonagle on April 14, 1995, following which Barrett was found guilty with respect to both of the stabbings. McGonagle recommended two consecutive sanctions of two years placement in the Department Disciplinary Unit at MCI-Cedar Junction (“DDU”), for a total DDU placement of four years. Barrett appealed that decision. On May 19, 1995, the Deputy Commissioner denied the appeal.
Barrett filed the present complaint, titled “Verified Complaint for Contempt Pursuant to M.G.L.ch. 231A Section 5,” on November 18, 1996.
Discussion
1. Challenge to conduct of disciplinary proceedings
In his “Verified Complaint for Contempt,” Barrett complains that his disciplinary hearing was unreasonably delayed resulting in prejudice to his defense, that the finding of guilty was based on improper informant information, and that there was not substantial evidence to support the finding of guilty. To the extent that Barrett’s complaint seeks to challenge the conduct of the disciplinary proceedings, it is an action in the nature of certiorari. Pidge v. Superintendent, Massachusetts Correctional Institution, Cedar Junction, 32 Mass.App.Ct. 14, 17 (1992). A civil action in the nature of certiorari must be commenced within sixty days after the conclusion of the proceeding being challenged. G.L.c. 249, §4.
The proceedings against Barrett concluded on May 19, 1995 when the Deputy Commissioner denied his appeal. Thus, an action in the nature of certiorari challenging errors in those proceedings had to be filed on or before July 18, 1995. Barrett’s complaint was not filed until November 18, 1996, sixteen months after the statute of limitations had run. Thus, that aspect of Barrett’s complaint that seeks to remedy alleged errors in the disciplinary proceedings must be dismissed as time-barred.
Barrett argues that he was unaware of the statute of limitations applicable to his claim because he did not have adequate access to legal research materials in the DDU. He argues that the law books available to him from the book cart in the DDU did not contain G.L.c. 249, §4 and that he therefore was unable to *554 ascertain that his claim was subject to a sixty-day statute of limitation.[1]
While an inmate has certain rights of access to legal materials, lack of access to such materials does not suspend or extend the applicable statute of limitations. If lack of access to materials has resulted in an adverse court decision in what would have been a meritorious claim, plaintiff may bring an action for damages and injunctive relief. See Sowell v. Vose, 941 F.2d 32 (1st Cir. 1991). Here, plaintiff has failed to file his claim in a timely manner and it must be dismissed. If that failure to make a timely filing is in fact on account of inadequate legal materials (and if he can show that this claim would have succeeded had it been timely filed), Barrett may bring an action for damages to remedy that alleged deprivation. The alleged deprivation does not allow him to toll the statute of limitations on this action in the nature of certiorari.
2. G.L.c. 129, §40
Barrett also complains that his placement in the DDU amounts to “isolation” and that he is being held in “isolation” in excess of the fifteen-day limit imposed by G.L.c. 129, §40. Numerous inmates have, in both state and federal court, sought to prove that the DDU is a form of “isolation.” None has been successful. See McGuinness v. Dubois, 891 F.Sup. 25, 28-29 (D.Mass. 1995), aff'd mem., 86 F.3d 1146 (1st Cir. 1996); Abrazinski v. Dubois, 876 F.Sup. 313, 319 (D.Mass. 1995); Vargas v. Dubois, Suffolk Superior Court, No. 93-942 (January 26, 1994) (Barrett, J.); MacDougall v. Dubois, Middlesex Superior Court, No. 93-3032, 2 Mass. L. Rptr. 294 (June 27, 1994) (O'Toole, J.).
Defendants have filed the affidavit of Fred Butterworth, a former Deputy Commissioner who was familiar with the practices of the Department of Correction dating back to the 1950s, including practices pertaining to solitary confinement and isolation. Prior to the passage of the current version of G.L.c. 127, §40 in 1955, inmates in solitary confinement were kept in dark cells and fed bread and water. See Report and Recommendations of the Governor’s Committee to Study the Massachusetts Correctional System, 1955 Senate Doc. No. 750. The practice of solitary confinement was viewed as inhumane, and the amendment to §40 provided for placing an inmate subject to discipline in an “isolation unit,” not in “solitary confinement.” The statute provided that an inmate in an “isolation unit” had to be provided with light, ventilation, adequate sanitary facilities, and at least one full meal daily, and the inmate could not be kept in an “isolation unit” for more than fifteen days for any one offence.
As explained in the Butterworth affidavit, following the passages of the current §40, an inmate placed in “isolation” was prohibited from communicating in any way with other inmates, was confined to his cell twenty-four hours a day, was not offered exercise, reading materials, visits, telephone calls, shower, television or radio, and was not provided with regular visits from medical staff or chaplains. The cells used for “isolation” had no windows.
The conditions at the DDU do not resemble the “isolation” described in the Butterworth affidavit. See Torres v. Dubois, Suffolk Superior Court, No. 94-0270 (February 10, 1997) (describing in detail the conditions in the DDU as part of class action challenge to conditions). Cells in the DDU have windows. Inmates in DDU cells cannot see inmates in other DDU cells, but they can communicate with each other (albeit with difficulty). An inmate placed in the DDU has access to an hour of exercise each day five days a week, giving him some limited access to other inmates in the unit five days a week. He may shower three times a week. He may borrow books from a book cart and keep up to four books in his cell at any one time. Correction officers and officials make regular rounds of the DDU, and nurses or medical assistants make rounds four times a day. Mental health and religious staff make rounds of the DDU once a week. During the first thirty days in the DDU, an inmate may not have radio or television, may not have visits with anyone other than his attorney and clergy, and may not make phone calls. Premised on good behavior, visits, telephone access, and a radio are permissible after the first thirty days.
While placement in the DDU is unquestionably more restrictive than placement in the general prison population, it is not “isolation” within the meaning of G.L.c. 127, §40. In response to defendants’ motion, plaintiff has not come forward with any evidence to suggest that there are disputed issues of material fact with respect to this “isolation” issue. He has not refuted anything in the Butterworth affidavit. He has not disputed defendants’ description of the DDU conditions (which is itself based on this court’s rulings in the Torres class action). In the absence of any genuine issue of material fact, this court will rule, consistent with others that have considered the issue, that placement in the DDU as it is presently operated is not confinement in an “isolation unit” within the meaning of G.L.c. 127, §40. On plaintiffs claim that his four-year DDU placement violates G.L.c. 127, §40, defendants are entitled to summary judgment in their favor.
ORDER
For the foregoing reasons, defendants’ motion to dismiss or in the alternative for summary judgment is ALLOWED and it is hereby ORDERED that judgment be entered in favor of defendants.

 Plaintiff was not transferred from MCI-Shirley to the DDU at MCI-Cedar Junction until June 13, 1995, twenty-four days after the final decision denying his appeal. Whatever restrictions on access to legal materials he may have encountered at the DDU, the first twenty-four days of his sixty-day statute of limitations period were not spent in the DDU.