Fremont-Smith, J.
In this case, plaintiff, a graduate student at the University of Massachusetts (“The University”), was suspended as a student after an administrative hearing. The plaintiff contends that his suspension was not based on substantial evidence and was arbitrary and capricious, in violation of c. 30A and c. 249, §4.
Defendant’s Motion to Dismiss' raises two issues:
(1) Does the University of Massachusetts Board of Trustees come within the purview of G.L.c. 30A of the State Administrative Procedure Act, so that its administrative actions may be reviewed thereunder?
(2) Is the plaintiffs complaint under G.L.c. 249, §4 (certiorari) time-barred, as having been filed beyond the sixty-day time limit for filing such complaints?
DISCUSSION
1. G.L.c. 30A: State Administrative Procedure Act.
According to G.L.c. 75, §1, the University is to be governed by a board of trustees (“the Board”). The Board is granted the authority “traditionally exercised by governing boards of institutions of higher learning,” and, in exercising its “authority, responsibility, powers and duties,” it:
... shall not in the management of the affairs of the university be subject to, or superseded by, any other state agency, board, bureau, commission, department or officer . . . G.L.c. 75, §1. (Emphasis supplied.)
The Board has the further authority, under G.L.c. 75, §3, to:
adopt, amend or repeal such rules and regulations for the government of the university, for the management, control and administration of its affairs, for its faculty, students and employees, and for the regulation of their own body, as they may deem necessary . . .
and to “impose reasonable penalties for the violation of the rules and regulations provided for in this section.” Id.
The question is, then, whether the Superior Court may exercise subject matter jurisdiction over the Board under G.L.c. 30A, §14(4) in order to review the University’s decision to suspend the plaintiff, in light of the broad grant of authority given to the Board by the legislature.
Section 30A defines “agency” as:
[A]ny department, board, commission, division or authority of the state government or subdivision of any of the foregoing . . . authorized by the law to make regulations or to conduct adjudicatory proceedings . . . (Emphasis supplied.)
The definition goes on to exclude particular boards and departments from the definition, but not the University.
While the University’s governing “board” is authorized by law to make regulations for the governance of its students, the University is not established as an independent “authority” (such as the MBTA, Massport, or the Massachusetts Turnpike Authority). The situation is thus dissimilar from that in Okongwu v. Stephens, 396 Mass. 724, 730 (1986), where the SJC held that the MBTA was not an “agency” because “(b]y the terms of its enabling legislation, the MBTA is an entity financially independent from the Commonwealth with a separate corporate existence ... [which] enjoys considerable political autonomy.” In support of this findings, the SJC further noted in Okongwu that the MBTA “may, without the consent of or control by the Commonwealth: fix, charge, and collect revenues from projects under its control; issue bonds; sue and be sued in its own name; acquire, hold, and dispose of real and personal property; make contracts; engage employees and agents; and exercise the power of eminent domain.” Id.
Not only does the University have few, if any, of these powers, but the words “any other state agency” in c. 75, §1, quoted above, also suggest that the legislature considered the Board to be a state agency, rather than a different type of political entity.
While two amendments to c. 75 in 1974 and 1977 make clear that the Legislature did intend the Board to have significant autonomy, nowhere did the Legis *212 lature indicate in these amendments that the Board should have complete autonomy so as to no longer be considered an “agency, board or department” of the Commonwealth, or indicate that the University and Board should not be subject to the requirements of c. 30A.[1] And, while the Attorney General opined in 1975 “that [b]y enacting G.L.c. 75, §§1 and 3, the Legislature intended to grant full and exclusive authority to the Board of Trustees with respect to the subject of rules and regulations concerning the management, control and administration of its affairs and the regulations of its own body,” Rep. A. G., Pub. Doc. No. 12, 94, 96 (1975); G.L.c. 75, §1 was amended shortly after this particular A.G.’s opinion so as to omit the “governed solely” language.[2]
While the Court is of the opinion that the University’s administrative actions are subject to the limited judicial review provided by c. 30A, the question is not clear from doubt. See: Bush v. Duffy, Hampshire Superior Court Civil Action No. 89-013 (1989, Welch, J.), which concludes to the contrary. Accordingly, the Court will consider whether plaintiff has an independent basis for maintaining this action under G.L.c. 249, §4.
2. G.L.c. 249, §4: Certiorari
Plaintiffs alternative basis for judicial review of the University’s decision to suspend him is G.L.c. 249, §4, or certiorari. The pertinent portion of this statute requires a party to commence a certiorari action, “within sixty days next after the proceeding complained of.” Id.
While the 60-day filing deadline has been strictly applied, no court has decided whether the deadline begins on the day the decision is actually made (i.e., the date of the letter notifying plaintiff of suspension, May 28, 1998) or on the day the aggrieved party actually received notice of the decision (i.e., June 4, 1998). In McLellan v. Commissioner of Correction, 29 Mass.App.Ct. 933, 934-35 (1990), the Appeals Court considered that the sixty-day period might be considered to start to run when the plaintiff “had notice that his administrative appeals had been denied,” although it did not decide the issue, as the plaintiff in that case had filed his complaint a year later, and was barred in any event.[3]
Neither party disputes the fact that the Chancellor of the University of Massachusetts sent a letter, dated May 28, 1998, to the plaintiff notifying him of the Chancellor’s decision to reduce the sanction against plaintiff from expulsion to suspension, which plaintiff claims to have received on June 4, 1998. Plaintiff filed his original complaint for judicial review (the c. 30A claim) on July 3, 1998 and filed a motion for leave to amend his original complaint on August 2, 1998 (adding the certiorari action), which motion was granted on August 5, 1998.
In light of the fact that the purpose of certiorari action is to provide "... [a] highly remedial salutaiy procedure, founded upon a sense of justice, to relieve against wrongs otherwise irremediable,” see Boston Edison Co. v. Board of Selectmen of Concord, 355 Mass. 79, 83 (1968), G.L.c. 249, §4, the Court concludes that, in the instant case, the purpose of the statute will be best met by construing the sixty-day deadline as beginning to run on June 4, 1998, the day the plaintiff received notice of the Chancellor’s final decision. It follows that he filed his certiorari action in a timely manner, and may proceed on that basis as well.
ORDER
For each of the foregoing reasons, the defendant’s motion to dismiss is DENIED.

The 1977 Amendment did insert a prevision requiring that the rules and regulations promulgated by the trustees shall be subject to the provisions of G.L.c. 30A, §§11A and 11A1/2 (the “open meeting requirement), but did not specify that the University was not subject to the other c. 30A provisions.

The 1974 version of G.L.c. 75, §1 stated: “There shall be a University of Massachusetts which shall continue as a state institution within the department of education but not under its control and shall be governed solely by the board of trustees ...” (emphasis added).
The amended version of G.L.c. 75, §1 (1977) states: ‘The state university shall be the University of Massachusetts. . . which shall continue as a public institution of higher learning within the system of public higher education and shall be governed by the board of trustees established herein . . .”

Another Appeals Court decision dealing with a certiorari action filed by a prisoner complaining of disciplinary actions taken against him construed the sixty-day deadline as beginning to run on the day of the “last administrative action regarding plaintiffs disciplinary sanctions . . . when the superintendent denied the plaintiffs appeal from the disciplinary board’s findings against him.” Pidge v. Superintendent, Massachusetts Correctional Institution, Cedar Junction, 32 Mass.App.Ct. 14, 18 (1992). The issue was not presented, however, whether the time period should begin to run on the day the plaintiff received notice of the decision, because, as in McLellan, the plaintiff missed the deadline by a significant period of time and would have been time-barred in any event.