Wrenn, Daniel M., J.
INTRODUCTION
This action arises from a series of incidents in which the plaintiffs allege that excessive and unjustified force was used against them at the Worcester County Jail and House of Correction (“the jail”), at which they are inmates. Relevant for the purposes of this motion are their claims under 42 U.S.C. § 1983 and G.L.c. 258, § 1 et seq. (Massachusetts Tort Claims Act, or “MTCA”), against Guy Glodis, in his official capacity as Sheriff of Worcester County, and the Commonwealth of Massachusetts (“the motion defendants”).
Before the court is the motion defendants’ Motion for Summaiy Judgment, contending that the plaintiffs have failed to exhaust their administrative remedies as required by federal and state law, that most of the plaintiffs have failed to make presentment of their claims as required by the MTCA, and that Michael Haiju’s tort claims are barred by the applicable statute of limitations. For the reasons that follow, the Motion for Summaiy Judgment will be allowed in part, denied in part, and the parties will be ordered to submit further evidence pertaining to the central issues raised in the motion.
BACKGROUND
The following facts are taken from the summaiy judgment record. Because the Motion for Summary Judgment rests exclusively on procedural grounds, the court will limit its examination of the plaintiffs’ substantive evidence, instead focusing primarily on evidence, or the lack thereof, related to the procedural issues raised by the motion defendants.
1. Substantive Allegations
The plaintiffs’ claims are based on a series of incidents at the jail, which occurred on or after February 20, 2007. They allege that, while they were inmates at the jail, they were shot with plastic bullets fired from the FN 303 less-lethal projectile launcher; sprayed with pepper spray and denied opportunities to wash it off their faces and eyes; and placed in restraints for extended periods of time, up to twenty-three hours. The plaintiffs aver that these uses of force were excessive, unnecessary, and constituted common-law torts, as well as violations of the Eighth Amendment to the U.S. Constitution.
2. Administrative Remedies
The jail has an inmate grievance process, designed to address disputes regarding incidents or conditions of confinement, such as those alleged by the plaintiffs. According to the Worcester Couniy Inmate Handbook, grievances are to be documented on Inmate Grievance Forms (“grievance forms”).[4] Such forms “shall be filed within ten (10) working days of the actual incident or situation or within ten (10) days of the inmate’s becoming aware of the incident or situation.” Ex. 7, 50-51. The plaintiffs either did not file grievances related to the incidents forming the basis of this action, or filed grievances outside the prescribed ten-day limitations period set forth above.
The plaintiffs contend that officials at the jail interfered with inmates’ access to grievance forms in a manner that made it impossible for them to submit timely grievances concerning the allegations in this action. They rely on three forms of evidence to support their position.
*254 First, the plaintiffs present the affidavit of Martin K. Mitchelman, Sr. Mitchelman is an expert witness with credentials and experience as a corrections officer.[5] Mitchelman testified that “(t]he supervisors in charge of dispensing or responsible for handing out grievance forms ... and the staff of the [jail] in general, expressly denied the inmate[s’] abilities to get grievances in order to process them in a timely fashion as it is required by acceptable standards of correctional care, state law, and federal law, i.e. [the Prison Litigation Reform Act]. Many, if not all, inmates expressed frustration over the denial of access to grievances. Many, if not all, had to obtain their grievance form through lawyers that represented them. The [jail’s] failure to make grievance forms available to inmates on demand grossly deviates from acceptance standard [sic] of correctional care ...”
Second, the plaintiffs present a report by the U.S. Department of Justice, which concluded that the grievance system at the jail was “inadequate.” U.S. Dep’t of Justice, Investigation of Worcester County Jail and House of Correction, 16-17 (Apr. 29, 2008). The reasons for this conclusion were largely based on the inaccessibility of grievance forms for inmates. Id, at 17.
Third, William Paicopulos, a former inmate at the jail but not a plaintiff in this action, submitted an affidavit in which he avers that jail officials affirmatively interfere with inmate access to the grievance process. He alleges that “in [his] experience at the [jail], whenever [he] asked for a grievance form, [he] would have to disclose the nature of [his] grievance before [he] could have a form — if [he] could get one at all. When [he] wanted to file a grievance claiming serious misconduct by the correctional staff, [he] could not get a grievance form or [he] could not get one in time to meet the 10-day deadline for filing.” Ex. 11, ¶¶6-7. On two occasions, Paicopoulos was shot with the FN 303. “Shortly after each of these incidents [he] tried unsuccessfully to get grievance forms from correctional staff to seek a remedy for being subjected to excessive force ... Several other pretrial detainees housed in the same area as [Paicopulous] were also shot with plastic bullets . . . and were unable to obtain grievance forms in time to make claims [they] had been subjected to excessive force.” Id., at ¶¶11-12, 14.
Fourth, the plaintiffs present copies of grievance forms by approximately twenty inmates, some of whom are plaintiffs in this action. The grievance forms include several statements attesting to jail officials’ efforts to interfere with inmates’ access to grievance forms. Specifically, Francis Baillargen and Raheem Childers state that they requested grievance forms only to be told that the prison officials did not have any. Nevin Dustin and Dennis Horton allege they had been denied grievance forms after requesting them on several occasions. Ryan Dean and Michael Baez also alleged that they were denied access to grievance forms when they requested them from prison officials. Wilfredo Vivella and Jeffrey Figueroa similarly alleged that they requested grievance forms from Captain Trainor but were denied; Vivella was told that he would only be wasting his time.
Theodore Klash and Hector Rodrigues alleged that they were denied access to grievance forms, and that prison officials retaliated against them when they made previous requests for grievance forms. Timothy Vargo also alleged that he was denied access to grievance forms until his attorney procured one on his behalf. Keith Johnson alleged that he had been denied access to grievance forms after requesting them on twelve occasions.
3. Presentment Letters
The motion defendants assert in their brief that the “[p]laintiffs have all failed to meet the presentment requirements of the MTCA[,]” except for J ohn F. Campbell. The plaintiffs do not address the issue of presentment in their Opposition. Contrary to the motion defendants’ position, the summary judgment record makes clear that Hector M. Rodrigues submitted a presentment letter to Guy Glodis on February 26, 2009, pertaining to an incident involving the use of excessive force that occurred on February 28, 2007. That presentment letter clearly identified the basis for, and the nature of, Rodrigues’ claims under the MTCA.
However, the court has not found any evidence concerning the other plaintiffs’ presentment letters in the summary judgment record.
The Complaint in this action was filed on February 22, 2010.
DISCUSSION
1. Standard
The familiar standard governing motions for summary judgment provides that summary judgment shall be granted forthwith where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 423 (1983). In assessing the record on a motion for summary judgment, all reasonable inferences are drawn in favor of the nonmoving party. Terra Nova v. Fray-Witzer, 449 Mass. 406, 411 (2007). “On summary judgment, the court’s task is not to weigh evidence or decide the credibility of the testimony before it.” Kelly v. Brigham & Women’s Hosp., 51 Mass.App.Ct. 297, 299 n.4 (2001).
2. Exhaustion of Administrative Remedies
The Prison Litigation Reform Act (“PLRA”) provides, in pertinent part, that “[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.” 42 U.S.C. §1997e(a).
The purpose of the PLRA was “to reduce the quantity and improve the quality of prisoner lawsuits ...” Porter v. Nussle, 534 U.S. 516, 524-25 (2002). The PLRA requires exhaustion of administrative remedies to achieve that goal because “the internal review might *255 filter out some frivolous claims . . . [a]nd for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.” Id., at 525 (internal citations omitted). The state analog to the PLRA, G.L.c. 127, §38F, was modeled after the cognate federal statute, and was intended to serve similar purposes. See Ryan v. Pepe, 65 Mass.App.Ct. 833, 835 (2006).
The exhaustion requirement is limited to “such administrative remedies as are available." 42 U.S.C. §1997e(a) (emphasis added). “Where prison officials prevent, thwart, or hinder a reasonable prisoner’s efforts to avail himself of an administrative remedy, they render that remedy ‘unavailable’ and a court will excuse the prisoner’s failure to exhaust.” Little v. Jones, 607 F.3d 1245, 1250 (10th Cir. 2010); see also Carter v. Newland, 441 F.Sup.2d 208, 211 (D.Mass. 2006) (exhaustion of administrative remedies not a bar to suit where inmate’s “attempt to do so was thwarted by either government incompetence or misconduct”).
Interference with inmates’ ability to initiate the grievance process renders it unavailable as an administrative remedy. Compare Kaba v. Stepp, 458 F.3d 678, 682 (7th Cir. 2006) (“If prison employees refuse to provide inmates with [grievance] forms when requested, it is difficult to understand how the inmate has any available remedies. Just as prison employees cannot exploit the exhaustion requirement by not responding to grievances, they should not be rewarded for preventing an inmate access to an administrative remedy”); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (inmate’s claims not barred for failure to exhaust administrative remedies where “prison officials denied him the necessary grievance forms”).
The plaintiffs have submitted evidence suggesting that officials at the jail took steps to interfere with their access to the grievance procedure. However, this evidence suffers from two noteworthy shortcomings.
First, much of the plaintiffs’ evidence suggests only a general, widespread pattern of interference by jail officials, without any reason to conclude that this broad practice was applied to them. Mitchelman’s affidavit, the U.S. Department of Justice report, and Paicopulos’ affidavit indicate only general practices of withholding grievance forms and other steps taken to interfere with access to the grievance process. That evidence does not provide any basis to conclude that the plaintiffs, specifically, were prevented from resorting to the grievance process because of interference from jail officials. At most, the evidence allows the inference that there was a general pattern of obstructing access to the grievance process, without any particular reason to link that general pattern to the plaintiffs themselves.
Second, while the grievance forms filled out by the plaintiffs do attest to measures taken by jail officials to thwart at least some of the plaintiffs’ efforts to initiate the grievance process, those grievance forms are inadmissible hearsay. See Madsen v. Erwin, 395 Mass. 715, 721 (1985). They are not statements sworn to under the penalties of perjury; rather, they are out of court statements by the plaintiffs who completed them, which are offered for the truth of the matters asserted therein. Consequently, they are inadmissible at the summary judgment stage.
Nevertheless, the plaintiffs’ evidence raises troubling questions about the conduct of officials at the jail. The evidence presently before the court may not compel the conclusion that jail officials interfered with the plaintiffs’ attempts to initiate the grievance process regarding the incidents alleged in the Complaint, but it also does not suggest that there was no attempt to interfere with the plaintiffs’ access to the grievance process.
Therefore, the court will allow each of the plaintiffs time to submit affidavits addressing the issues outlined above.
3. Massachusetts Tort Claims Act
“A civil action shall not be instituted against a public employer on a claim for damages under [the MTCA] unless the claimant shall have first presented his claim in writing to the executive officer of such public employer within two years after the date upon which the cause of action arose . . .” G.L.c. 258, §4. “Presentment must be made in strict compliance with the statute.” Garcia v. Essex Cnty. Sheriffs Dept., 65 Mass.App.Ct. 104, 107 (2005), and cases cited.
Contrary to the motion defendants’ assertions, more plaintiffs than John F. Campbell have made presentment of their MTCA claims within the two-year period set forth in G.L.c. 258, §4. For example, Hector Rodrigues submitted a timely presentment letter concerning his allegations of excessive force. Accordingly, the Motion for Summary Judgment will be denied to the extent it seeks disposition of Rodrigues’ MTCA claim for failure to make proper presentment.
However, there is no evidence presently before the court concerning when, or if, the other plaintiffs submitted presentment letters, or what the contents of those presentment letters was. Therefore, this court will permit the plaintiffs time to submit authenticated copies of any presentment letter submitted by Michael C. Harju, Marlon Guardado, Ronald G. Paris, Raheem Childers, Franz Harris, Jr., Nevin Dustin, Hiram Irizarry Mojica, Myron Vacca, Phillip Shannonhouse, and Timothy Vargo. If any of those plaintiffs have not submitted presentment letters, they or their counsel are to submit an affidavit stating that they have not done so.
4. Statute of Limitations
According to Michael Haiju’s deposition testimony, the incident forming the basis of his claims took place on January 24, 2007. Harju Dep. 49:7-11. As noted above, this action was commenced on February 22, 2010. Accordingly, Haiju’s tort claims are barred by the applicable statute of limitations. See G.L.c. 260, §2A.
*256 CONCLUSION AND ORDER
For the foregoing reasons, the Motion for Summary Judgment is ALLOWED to the extent it seeks disposition of Michael Harju’s tort-based claims. The motion is DENIED to the extent it seeks disposition of Hector Rodrigues’ claims for failure to make presentment. The plaintiffs are ordered to submit further evidence to this court prior to the August 21,2012 hearing as specified in this Memorandum of Decision.
This matter will be subject to a further hearing on August 21, 2012.

 The motion defendants contend that, contrary to the explicit terms of the Inmate Handbook, the jail does not in fact require that grievances be submitted on Inmate Grievance Forms. Because that position is, at best, contradicted by other evidence in the summary judgment record, the court need not address it further except to state that a dispute of fact exists concerning the motion defendants’ position.

 Mitchelman was a Deputy Sheriff, Deputy Superintendent, and Director of Training and Special Operations in the Suffolk County Sheriffs Department. He developed a training facility for correctional officers in Chelsea, Massachusetts, and has experience related to use of force in a correctional setting, and with the use of the FN 303 in particular. He has testified as an expert in Ramos v. Flynn, Civil Action No. 06-10645 (D.Mass.), addressing conditions at the jail.