# DECISIONS

OF THE

## SUPREME JUDICIAL COURT

OF

## MASSACHUSETTS

Mac S. Hudson *vs.* Commissioner of Correction
& others.[1]

Suffolk. December 7, 1999. - March 9, 2000.

Present: Marshall, C.J., Abrams, Lynch, Greaney, Ireland, & Cowin, JJ.

*Imprisonment,* Enforcement of discipline, Transfer of prisoner. *Due Process of Law,* Prison disciplinary proceedings.

A Superior Court judge correctly ordered summary judgment in favor of defendant correction officials on an inmate's claims of alleged deprivation of rights by virtue of restrictive confinement and alleged defects in the disciplinary process, where there were no disputed issues of material fact and where, in the circumstances, the inmate had received all the process due under applicable regulations and State and Federal constitutional standards. [3-7]

---

[1]The superintendent, the deputy of security, a unit manager, a unit team sergeant, and a disciplinary hearing officer of the Massachusetts Correctional Institution at Cedar Junction.

CIVIL ACTION commenced in the Superior Court Department on July 23, 1996.

The case was heard by *Thayer Fremont-Smith*, J., on motions for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

The case was submitted on briefs.

*Mac S. Hudson*, pro se.

*Nancy Ankers White*, Special Assistant Attorney General, & *Richard C. McFarland* for the defendants.

IRELAND, J. The plaintiff, Mac S. Hudson, is incarcerated at the Massachusetts Correctional Institution at Cedar Junction (MCI, Cedar Junction). This case arises from Hudson's placement in restrictive confinement and the procedure under which Hudson was found guilty of fighting with another inmate. Hudson, acting pro se, commenced an action in the nature of certiorari, pursuant to G. L. c. 249, § 4, against the defendants in the Superior Court. His complaint also sought declaratory relief under G. L. c. 231A, § 1; damages under 42 U.S.C. § 1983 (1994); and an order for civil contempt. A Superior Court judge granted the defendants' motion for summary judgment on all counts, and the Appeals Court affirmed. We granted the plaintiff's application for further appellate review. In accordance with the reasoning of *Hudson* v. *Commissioner of Correction*, 46 Mass. App. Ct. 538 (1999) (*Hudson*), we conclude that the grant of summary judgment was appropriate because Hudson received all the process he was entitled to under the relevant regulations and constitutional provisions.

The material facts are not in dispute. On June 1, 1996, an altercation took place at MCI, Cedar Junction, and correction personnel found a bloody shirt in the stairwell of the Essex II housing unit. After an investigation, inmates Hudson and Warren Antwine (Antwine) were placed on "awaiting action" status in Essex II.[2] On June 4, 1996, Antwine was assaulted by unnamed inmates of Essex II. On that same date, Hudson's status was changed to "awaiting action/pending investigation" and he was moved to restrictive confinement in the Essex I unit.

On June 11, 1996, Hudson was issued a disciplinary report alleging that he had either assaulted or played a role in the two

---

[2]Inmates can be placed on "awaiting action" status pending an investigation or a disciplinary hearing. See 103 Code Mass. Regs. § 430.21(1) (1993).

assaults on Antwine. Prior to the scheduled disciplinary hearing, Hudson requested certain documentary evidence and that a correction officer, unit manager, unit sergeant, and Antwine be called to testify. His request to call Antwine was denied based on security concerns, but he was permitted to submit an affidavit from him. Hudson's request for the unit sergeant's testimony was denied because that testimony would have been duplicative of that of the other officers. Hudson was provided with copies of the relevant incident reports and, at the hearing, was given a copy of the "informant checklist."[3]

The hearing occurred on June 19 and 20, 1996. Hudson testified in his own behalf, and filed an affidavit denying the charges, asserting that he and Antwine were acquaintances who had never had a disagreement. Hudson submitted Antwine's affidavit to similar effect. Correction officers testified to their observations and presented evidence received from an informant with personal knowledge of the altercation, who identified Hudson as having assaulted Antwine. Incident reports were also introduced indicating that Hudson and Antwine had been involved in oral confrontations.

On June 20, 1996, the hearing officer issued his written decision. Not crediting Hudson's version of the facts, the hearing officer found Hudson guilty by a preponderance of the evidence of fighting on June 1, 1996, and dismissed the other charges. The hearing officer recommended a sanction of two weeks' loss of television, radio, canteen, and telephone privileges, all sanctions suspended for sixty days.[4] Hudson appealed from the decision of the hearing officer to the superintendent, whose deputy denied the appeal. Hudson remained in the Essex I unit for approximately thirty-two days after the hearing officer issued his decision because there were no cells available in Essex II.[5]

Hudson's appellate arguments center on alleged procedural

[3]Hudson's request to examine the informant reports themselves was denied because all the informant's information was to be addressed at the hearing, and his request for Antwine's medical records was denied due to confidentiality concerns.

[4]Because of the sixty-day suspension of the disciplinary sanctions, it appears that Hudson was never actually subjected to them.

[5]Hudson now asserts, in conclusory fashion, that continued confinement in Essex I was a routine punishment for those found guilty in disciplinary hearings. But in his affidavit in support of his motion for summary judgment, Hudson acknowledges that he was held in Essex I pending the availability of a cell in Essex II.

shortcomings in his hearing, as well as his six- to seven-week placement in more restrictive confinement in Essex I.[6] In regard to the adequacy of the process provided at Hudson's hearing, specifically his right to tape record the hearing and the use of informant testimony at the hearing, the record reveals the proper regulations were followed. Hudson's request to tape record the proceedings was denied because Hudson had not followed the regulations to make funds available for that purpose. As the Appeals Court stated, Hudson's request to tape record the hearing "clearly failed to comply with 103 Code Mass. Regs. § 430.12(3) (1993); and the use of a confidential informant's inculpatory statement at his hearing complied with the relevant provisions of 103 Code Mass. Regs. § 430.15 (1993)." *Hudson, supra* at 548-549. The process provided included advance notice of the charges against him, the opportunity, "consistent with institutional safety and correctional goals," to call witnesses at his hearing, and the receipt of a written statement of reasons for decision from the fact finder. *O'Malley* v. *Sheriff of Worcester County*, 415 Mass. 132, 138 (1993). See *Hewitt* v. *Helms*, 459 U.S. 460, 476 (1983); *Wolff* v. *McDonnell*, 418 U.S. 539, 563-567 (1974).

It is clear that Hudson's "placement and confinement . . . before . . . his disciplinary hearing [were] explicitly authorized by unchallenged applicable regulations." *Hudson, supra* at 542. The "awaiting action" regulation at the time of Hudson's offense, 103 Code Mass. Regs. § 430.21(1) (1993), stated: "At the discretion of the Superintendent or his designee . . . an inmate who is under investigation for a possible disciplinary offense or has been charged with or found guilty of a disciplinary offense, may be placed on awaiting action status at the institution where he is then confined. Such status may include more restrictive confinement as deemed appropriate by the Superintendent or his designee."

Regarding Hudson's due process claims under the Federal and State Constitutions in regard to his placement in Essex I before his hearing, we have "long recognized the broad discretion of the Commissioner of Correction to transfer inmates within the prison system or within a particular institution" or to

---

[6]Many of Hudson's arguments also seem to question the correctness of the hearing officer's determination of guilt. There was sufficient evidence in the record to support the finding of guilt. It is not this court's role to "second-guess" the credibility determinations of the hearing officer.

higher security as long as the use of that discretion does not affect the duration of an inmate's sentence or subject an inmate "to conditions different from those customarily applied to other inmates." *Hudson, supra* at 543, quoting *Hastings* v. *Commissioner of Correction*, 424 Mass. 46, 52 (1997). See *Jackson* v. *Commissioner of Correction*, 388 Mass. 700, 703 (1983). Similarly, we have acknowledged the reasonable use of "awaiting action" status, including administrative segregation, as an investigative tool assisting in the orderly management of correctional facilities. See *Lamoureux* v. *Superintendent, Mass. Correctional Inst., Walpole*, 390 Mass. 409, 411-412 n.7 (1983).

Hudson further argues that the Superior Court judge's grant of summary judgment was in error because there was a disputed issue of fact to be resolved. Hudson alleges that he was moved to Essex I on June 4, 1996, sometime before the assault on Antwine, while the defendants maintain that Hudson was moved subsequent to the assault. However, "[t]hat some facts are in dispute will not necessarily defeat a motion for summary judgment. The point is that the disputed issue of fact must be material." *Beatty* v. *NP Corp.*, 31 Mass. App. Ct. 606, 607 (1991), citing *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). Even assuming Hudson's version of the timing were correct, it was not material because the "awaiting action" regulation authorized his transfer after the June 1 incident. With no material fact at issue, resolution of the case on summary judgment was appropriate.[7]

Hudson also contests the approximately thirty-two days he spent in Essex I following the issuance of the hearing officer's written decision, as well as the lack of a review of his placement fifteen days after the hearing as specified by the regulations. Hudson, however, appears to acknowledge that he was

---

[7]Hudson relies on a court decision issued on January 5, 1996, in Gilchrist *vs.* DuBois, Suffolk Superior Court No. 93-6300, which he interprets as requiring the provision of various due process protections prior to a transfer to more restrictive confinement, to argue that the precise timing of his transfer to Essex I was a material fact. The alleged violation of the Gilchrist order is also the basis for Hudson's claim that the defendants should be held in contempt. The order in Gilchrist, however, is not applicable here, because as the Appeals Court pointed out, "the original injunctive order in Gilchrist applied to only inmate Gilchrist himself and was not amended to apply to other prisoners until . . . eleven weeks after Hudson's transfer." *Hudson, supra* at 540 n.5. We also note that the Appeals Court has since vacated the Gilchrist order pending further proceedings. See *Gilchrist* v. *Commissioner of Correction*, 48 Mass. App. Ct. 60, 66 (1999).

only held in Essex I pending the availability of a cell in Essex II. See note 5, *supra*. While Hudson is correct that he was technically entitled to a review of his status fifteen days after the hearing, the lack of such a review did not infringe on his rights because no cell was available in Essex II. See 103 Code Mass. Regs. § 421.08(3) (1994) ("[w]henever an inmate has spent 15 days on awaiting action in restrictive confinement, he shall be immediately reviewed, and every 15 days thereafter"). Further, according to the regulations, the time periods for review are directory. 103 Code Mass. Regs. § 421.23 (1994). As the Appeals Court stated in *Hudson, supra* at 545: "[O]ur courts have consistently analyzed the lawfulness of a term of administrative segregation by reference to the reasonableness of its duration and the existence of valid justification for and fair process in its imposition, not merely whether regulations were technically violated or periodic reviews were omitted during the confinement."

As for Hudson's total stay in Essex I, the duration of administrative segregation is a factor in determining its reasonableness. See *Puckett* v. *Commissioner of Correction*, 28 Mass. App. Ct. 448, 451 (1990), and cases cited. Hudson's placement in Essex I for a total of six or seven weeks, "with each stage consistent with the regulations and validated by a hearing," was reasonable. *Hudson, supra* at 544. Cf. *Lamoureux* v. *Superintendent, Mass. Correctional Inst., Walpole, supra* at 417-418 (no due process violation involved in administrative segregation for fourteen weeks). Contrast *Royce* v. *Commissioner of Correction*, 390 Mass. 425, 430 & n.9 (1983) (administrative segregation for a period of two years without hearing or status review unreasonable); *Puckett* v. *Commissioner of Correction, supra* (restrictive detention on awaiting action status for five and one-half months without explanation unreasonable as matter of law).

Finally, Hudson claims that his rights under the Eighth Amendment to the United States Constitution and art. 26 of the Massachusetts Declaration of Rights were violated because, at some unspecified point during his challenged confinement, he was denied exercise for seventeen days. However, this claim is contradicted by the record, and, as the Appeals Court noted, even assuming the claim to be true, it "is also devoid of factual support . . . that . . . the defendants acted in this regard with deliberate indifference to the claimed unlawful conditions and that those conditions constituted . . . unnecessary and wanton

infliction of pain grossly disproportionate to the severity of his offense." *Hudson, supra* at 548, citing *Rhodes* v. *Chapman,* 452 U.S. 337, 347 (1981). See *Libby* v. *Commissioner of Correction,* 385 Mass. 421, 431 (1982).[8]

Hudson claims that the Superior Court judge erred in relying on the standard set out in *Sandin* v. *Conner,* 515 U.S. 472 (1995) (*Sandin*), for evaluating prisoners' due process claims because he was entitled to greater protections under State constitutional law. Procedural due process protections are only triggered when a liberty or property interest is at issue. See *Regents of State Colleges* v. *Roth,* 408 U.S. 564, 571 (1972). In *Sandin, supra* at 484, the United States Supreme Court held that, absent a showing of an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," State regulations would not create the requisite liberty interest to trigger due process protections under the Federal Constitution.[9] Ultimately, the Appeals Court panel did not rest its decision on *Sandin* because it concluded that, "to the extent Hudson could claim due process rights, they were not violated but were rather recognized and provided." *Hudson, supra* at 547.

We agree with the reasoning of the Appeals Court. In *Torres* v. *Commissioner of Correction,* 427 Mass. 611, 618, cert. denied, 525 U.S. 1017 (1998), we analyzed the process provided to the inmate and concluded that he had received the process due an individual with a liberty interest. Such is the situation in this case. It is therefore unnecessary to resolve the unsettled questions identified by the Appeals Court in applying the *Sandin* analysis, see note 9, *supra,* or whether it is appropriate for purposes of the State Constitution's due process requirements.

Accordingly, the grant of summary judgment for the

---

[8]Hudson also "contends that the judge abused his discretion in allowing the defendants' motion for a protective order, pursuant to Mass. R. Civ. P. 26 (c), as amended, 423 Mass. 1401 (1996), to stay his discovery pending a ruling on their motion to dismiss or in the alternative for summary judgment." *Hudson, supra* at 549. This argument is without merit, as "[h]e makes no showing, . . . as is necessary, that the judge abused the broad discretion with which he is invested in dealing with protective orders, see *Merles* v. *Lerner,* 391 Mass. 221, 226 (1984)." *Id.*

[9]As the Appeals Court decision noted: "A number of unsettled and difficult questions remain regarding how to apply the *Sandin* analysis, among them (1) what are the criteria for determining whether the restrictive hardships challenged by the prisoner are or are not 'atypical and significant' deprivations; and (2) what circumstances or conditions are to be taken as representing 'the ordinary incidents of prison life.' " *Hudson, supra* at 546-547, and cases cited.

defendants was appropriate, as Hudson received all the process that was due an inmate who had been deprived of a liberty interest.

*Judgment affirmed.*