JAMES RYAN vs. PETER PEPE[1] & others.[2]

No. 04-P-525.

Suffolk. June 9, 2005. - March 31, 2006.

Present: COWIN, SMITH, & GREEN, JJ.

*Administrative Law,* Exhaustion of remedies. *Imprisonment. Constitutional Law,* Imprisonment.

In an action brought by an inmate in the lawful custody of the Department of Correction (department), seeking declaratory relief and damages for alleged Federal civil rights violations under 42 U.S.C. § 1983 (2000), arising from his being held for approximately two and one-half years in a segregation unit on "awaiting action pending investigation" status, without the benefit of a hearing or periodic formal review, the trial judge properly granted summary judgment in favor of the department, where there was no evidence in the record that the plaintiff inmate had ever attempted to exhaust an available administrative remedy (specifically, a grievance procedure set forth in the department's regulations), and thus had not satisfied a required condition for bringing suit. [836-839]

CIVIL ACTION commenced in the Superior Court Department on April 19, 2000.

The case was heard by *Christine M. McEvoy,* J., on motions for summary judgment.

*Jessica D. Hedges* for the plaintiff.

*Margaret S. Melville* for the defendants.

COWIN, J. The plaintiff, an inmate in the lawful custody of the Department of Correction (department), filed claims for declaratory relief and damages, alleging Federal civil rights violations under 42 U.S.C. § 1983 (2000), arising from his being held for approximately two and one-half years in a segregation unit on "awaiting action pending investigation" (AAPI) status without

[1]Former superintendent of Massachusetts Correctional Institution, Cedar Junction.

[2]John Marshall, former superintendent of Massachusetts Correctional Institution, Cedar Junction, and Michael Maloney, former Commissioner of Correction.

benefit of a hearing or periodic formal review.[3] On the parties' cross motions for summary judgment, a judge of the Superior Court determined that the plaintiff had not exhausted an available administrative remedy, specifically, a grievance procedure set forth in the department's regulations, see 103 Code Mass. Regs. §§ 491.01 et seq. (2001), and thus had not satisfied a required condition for bringing suit. Accordingly, she denied the plaintiff's motion, allowed the motion of the defendants, and dismissed the complaint.

The plaintiff's timely appeal brings the case to this court. His arguments on appeal are devoted largely to substantive issues. Thus, he asserts that his administrative confinement in segregation constituted the kind of "atypical and significant hardship . . . in relation to the ordinary incidents of prison life" that the Supreme Court has recognized as a potential violation of due process. *Sandin* v. *Conner*, 515 U.S. 472, 484 (1995). He argues further that, under established law governing the confinement and segregation of prisoners, he was in fact not afforded due process, and that he is entitled to damages because his treatment exceeded a simple regulatory violation and had a real impact on his constitutional rights. However, whatever the merit of these claims, we agree with the defendants that the appeal turns on whether the plaintiff satisfied an administrative prerequisite to suit; if (as the judge ruled) he failed to do so, the Superior Court lacked the authority to adjudicate his contentions or grant him relief.

The Federal Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (2000), bars civil rights claims by prisoners under 42 U.S.C. § 1983 or claims under any other Federal statute "until such administrative remedies as are available are exhausted." The exhaustion requirement is mandatory. See *Casanova* v. *DuBois*, 289 F.3d 142, 147 (1st Cir. 2002). Before proceeding in court, the record must affirmatively demonstrate that the plaintiff inmate has pursued to final resolution any available administrative remedy or procedure that might redress

---

[3]The investigation at issue came about by virtue of allegations that the plaintiff, incarcerated for armed robbery and breaking and entering with intent to commit a felony, attacked another inmate, intimidated witnesses, and plotted to escape.

his claim or issue. See *Brown* v. *Toombs*, 139 F.3d 1102, 1104 (6th Cir.), cert. denied, 525 U.S. 833 (1998).[4]

In 1999, the Massachusetts Legislature created an exhaustion requirement similar to that in the Federal Prison Litigation Reform Act. See G. L. c. 127, § 38F, inserted by St. 1999, c. 127, § 133, effective July 1, 1999. Section 38F states that "[a]n inmate shall not file any claim that may be the subject of a grievance under section 38E unless the inmate has exhausted the administrative remedy established pursuant to said section 38E." In G. L. c. 127, § 38E, as inserted by St. 1999, c. 127, § 133, the Legislature directed the Commissioner of Correction to establish a "fair, impartial, speedy and effective system for the resolution of grievances filed against the department . . . by inmates." In response to this directive, the department promulgated 103 Code Mass. Regs. §§ 491.01-491.23 (2001), inclusive, setting forth rules and procedures for resolving inmates' grievances.

At the outset, we note that the department's regulations governing resolution of grievances did not take effect until January 5, 2001. The plaintiff was assigned to AAPI status between April 10, 1998, and September 18, 2000. He filed his complaint in this proceeding on April 19, 2000. Despite this, the parties, both in the Superior Court and in this court, appear to have litigated the case on the assumption that 103 Code Mass. Regs. §§ 491.01 et seq. applied. Concerned by the apparent discrepancy, we entered an order directing that the parties submit clarifying memoranda, which they have done.

The regulations governing grievances on various subjects, including segregation on AAPI status, adopted by the department effective January 5, 2001, were preceded by a statement of department policy regarding such grievances set forth in Inmate Grievances, 103 DOC §§ 491.01 et seq. (1998). That policy was adopted in 1996. A version effective March 16, 1998, prior to the commencement of the segregation that the

---

[4]There is disagreement among the various Federal circuit courts of appeals as to which party bears the burden of proof on the exhaustion requirement. See, e.g., *Ray* v. *Kertes*, 285 F.3d 287, 293-294 (3d Cir. 2002), and cases cited therein. In this instance, the defendant prison officials asserted as an affirmative defense the plaintiff's failure to use the grievance process. The plaintiff offered nothing to create a genuine issue of material fact on the exhaustion question.

plaintiff challenges, remained in force throughout the duration of that segregation. The policy constituted official administrative action binding on the department notwithstanding that it was not promulgated in the form of a regulation. See *Commissioner of Rev.* v. *BayBank Middlesex*, 421 Mass. 736, 739-740 (1996). We have examined the provisions of the 1998 department policy statement, which was an exhibit in the Superior Court proceeding, as well as the provisions of the ensuing 2001 regulations, and are satisfied that they are substantively the same.[5] Furthermore, the plaintiff has asserted his alternative positions (i.e., that the regulations do not apply to segregation on AAPI status or, if they do, that he complied with them) without suggesting at any stage of the case that the regulations were inapplicable by reason of the time of their promulgation.

We turn then to a discussion of the general requirements of the grievance process as set forth in 103 DOC §§ 491.01 et seq. (1998) (and continued in effect in 103 Code Mass. Regs. §§ 491.01 et seq. [2001]). With certain exceptions enumerated in § 491.02 of the 1998 policy statement, the process covers all inmate grievances.[6] An "Institutional Grievance Coordinator" (IGC) is the department's designated staff person responsible for coordinating and administering the grievance system within a particular department facility. See 103 DOC § 491.01. The policy includes provisions governing when, how, and where a grievance is to be filed. See 103 DOC § 491.04. See also 103 DOC §§ 491.05 (processing grievances), 491.06 (appeal of grievance decisions), and 491.11 (effect of failure to follow time limits, which, unless waived by IGC or superintendent, results in termination of grievance process). In short, the policy creates a detailed grievance system for resolving inmate

---

[5]Indeed, the plaintiff concedes this, stating in his supplemental memorandum that "103 C.M.R. § 491.01 et seq. is substantially the same as the Department of Correction policy 103 DOC 491.00 in effect from March, 1998 to January, 2001."

[6]The exceptions include inmate classification and disciplinary proceedings (each of which has its own appeal mechanism) and medical decisions. See 103 DOC § 491.02 (1998). The exceptions were subsequently expanded to include decisions or recommendations regarding therapeutic diets as well as decisions regarding an inmate's mental health. See 103 Code Mass. Regs. § 491.08(1) (2001).

claims, including disputes regarding an inmate's placement on AAPI status.

In support of their proposition that the plaintiff had not availed himself of the grievance procedure before going to court, the defendants submitted affidavits of Gary Fyfe, the IGC for Massachusetts Correctional Institution (MCI), Cedar Junction, the facility in which the plaintiff was held. Fyfe testified that the administrative office at MCI, Cedar Junction, maintains a log of all grievances filed by inmates. Fyfe examined the log of grievances filed between April 10, 1998, the date the plaintiff was placed on AAPI status, and February, 2001. Fyfe found no record of any grievance having been filed by the plaintiff during that period. Fyfe described in a supplemental affidavit how inmates are educated regarding the process to be followed in pursuing a grievance and told where and how to obtain grievance forms (available from a number of sources, including Fyfe's office). Fyfe confirmed that inmates such as the plaintiff, who are placed on AAPI status and sent to a segregated unit, may grieve their status pursuant to the normal grievance process, while those who are segregated for disciplinary reasons must follow a different avenue of review. Had the plaintiff grieved his AAPI status, the matter would have been investigated by the IGC; and, if the grievance were denied by him, the plaintiff could then have appealed the denial to the prison superintendent.

The plaintiff does not dispute that he did not obtain or file a grievance form, seek assistance from the IGC, or attempt to grieve his AAPI status in the prescribed way. Rather, he argues that he did not fail to exhaust the grievance process because he, or attorneys on his behalf, wrote to the superintendent of the institution complaining of his continued segregation on AAPI status. On no occasion does a letter state that the plaintiff seeks to initiate the grievance process. Fyfe's affidavit makes clear, without contrary evidence offered by the plaintiff, that a grievance may be initiated by obtaining a form from any correction officer in the inmate's housing unit, a department caseworker, the main prison library (or from a satellite librarian if the inmate is in segregation), or the IGC. There is no basis on which the plaintiff could reasonably assume, particularly when represented by counsel, that a grievance could effectively be initiated by

means of a general letter of complaint addressed to the prison superintendent.

The plaintiff argues in the alternative that his status was not subject to the general grievance procedure, and therefore there was no prior administrative process that he was required to exhaust. In aid of this theory, he offered one page from the grievance log book for November, 1996, almost two years before he was placed on AAPI status. The log shows a November 7, 1996, entry relative to another inmate's grievance that AAPI status is "not griev[able]." The grievance was not submitted by the plaintiff, and the summary judgment record contains nothing that illuminates why no action was taken. The inference sought by the plaintiff that this single entry made approximately one and one-half years prior to commencement of his segregation indicates that the department routinely refused to grieve cases of this nature despite its written policy to the contrary is not reasonable.

The plaintiff claims in addition that he was not required to grieve his AAPI status because assignment to that status for an extended period of time is the functional equivalent of being disciplined or reclassified, neither of which was grievable under 103 DOC § 491.02. Thus, his argument continues, he cannot be required to exhaust a grievance process that was not available in his case. However, the department's policy and regulations do not equate AAPI status with discipline or reclassification, subjects that are treated differently and that are governed by separate appeal provisions.[7] It was, of course, open to the plaintiff in the course of a properly asserted grievance to attempt to demonstrate that AAPI status in his case was in effect an unlawful imposition of discipline or a reclassification, but he cannot obtain such a determination by refusing to grieve the case altogether.

As in the case of the Federal Prison Litigation Reform Act, the 1999 amendments to G. L. c. 127, which directed the establishment of a grievance process for inmate complaints, were intended to stem the tide of frivolous litigation by prison

---

[7]We note in this regard that there is no evidence that the plaintiff ever attempted to avail himself of the appellate procedures applicable to discipline or reclassification.

inmates. See *Longval* v. *Superior Court Dept. of the Trial Court,*
434 Mass. 718, 718-719 (2001). Both Federal and State law
now expressly require inmates to exhaust available grievance
procedures before going to court. There is no evidence in the
summary judgment record that the plaintiff ever attempted to do
so, and his claims were thus properly dismissed.

*Judgment affirmed.*