MILKEY, J.
*398 During the relevant time period, the plaintiff, Joseph Davis, was an inmate at Massachusetts Correctional Institution, Cedar Junction (MCI-Cedar Junction). On October 21, 2010, another inmate there slashed Davis's face with a razor blade, causing serious harm. In the immediate aftermath of the attack, Davis sought to file grievances with respect to the failure by prison officials to protect him from such harm, as well as with respect to their treatment of him after the attack. Later, he added additional grievances, such as one questioning how the surveillance footage of the incident was lost. His grievances were rejected *399 as untimely filed.[2] Davis *786 subsequently filed a personal injury action against prison officials based on both Federal and State law. On summary judgment, a Superior Court judge dismissed the action on the grounds that he failed to exhaust his administrative remedies. On appeal, Davis argues that prison practices -- in particular the unavailability of grievance forms and the difficulty of filing such forms in the unit in which he was housed -- prevented him from timely filing. We vacate and remand for further proceedings.
Regulatory background. The filing of inmate grievances is governed by the Federal Prison Litigation Reform Act of 1995 (FPLRA), 42 U.S.C. § 1997e(a) (2012), and its State counterpart, G. L. c. 127, §§ 38E - 38H. These statutes sought "to stem the tide of frivolous litigation by prison inmates." Ryan v. Pepe, 65 Mass. App. Ct. 833, 838-839, 845 N.E.2d 1136 (2006), citing Longval v. Superior Court Dep't of the Trial Court, 434 Mass. 718, 718-719, 752 N.E.2d 674 (2001). Under the statutes, in order to pursue actions in court regarding the conditions of their confinement, inmates first must pursue a grievance through a regularized administrative process. If an inmate fails to exhaust his available administrative remedies in this manner, he is barred from pursuing judicial relief. See Ross v. Blake, --- U.S. ----, 136 S.Ct. 1850, 1854-1855, 195 L.Ed.2d 117 (2016) ; Ryan, supra at 839, 845%20N.E.2d%201136">845 N.E.2d 1136.[3]
The Department of Correction has promulgated regulations *400 governing the grievance process. See 103 Code Mass. Regs. §§ 491.01 - 491.27 (2017). At the time of the incident, those regulations stated that inmates must be given ready access to grievance forms even if they are being held in segregated units such as the "Special Management Unit" at MCI-Cedar Junction known as "Ten Block." See 103 Code Mass. Regs. § 491.09(1) (2001) ("Grievance forms shall be readily available to all inmates, including those in segregated units").[4] The 2010 MCI-Cedar Junction orientation *787 manual (2010 orientation manual), which all inmates at MCI-Cedar junction were provided upon arrival, amplifies this point by extending its application to the full grievance process: "All inmates shall have unimpeded access to the inmate grievance process in order to address legitimate concerns or complaints."
The grievance regulation that applied in 2010 laid out two paths through which an inmate grievance "may be filed." 103 Code Mass. Regs. § 491.09(3) (2001). One was by filing it "directly with the [prison's] Superintendent, Deputy Superintendent, Facility Administrator, or Institutional Grievance Coordinator [ (IGC) ]." 103 Code Mass. Regs. § 491.09(3)(A). The other was "by depositing the completed form in a locked mailbox or drop box." 103 Code Mass. Regs. § 491.09(3)(B). The 2010 orientation manual added some specificity about the filing process: "All completed forms shall be submitted directly in hand to the IGC, Superintendent, Deputy Superintendent, or by depositing the them [sic ] in the locked mailbox or the locked grievance boxes located in your housing unit and the east and west wing corridor." Certain details of the grievance process are reserved for later discussion.
Factual background. With this case having been resolved on summary judgment, we review the facts in the light most favorable to Davis, the nonmoving party. See Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120, 571 N.E.2d 357 (1991).
After Davis's face was slashed, he was taken to the prison's *401 medical center where he spent approximately three days recovering before being transferred to Ten Block as a result of the altercation. While he was in the medical center, he thrice requested a grievance form from correction officials or medical personnel. All three attempts were unsuccessful, with Davis being told that the form was not available or that he should wait until his transfer to Ten Block.
Once Davis was sent to Ten Block, he again tried to secure a grievance form. A corrections official there told him -- inaccurately -- that he should not file a grievance until the prison's investigation of the incident was finished, at which time he would be given a grievance form to complete. Davis nevertheless persisted, and on November 8, 2010, he obtained and completed a grievance form. The question he faced was how to file that form now that he was being held in Ten Block.
Inmates held in segregated units such as Ten Block generally are confined to their cells except for very limited periods.[5] An inmate held in such a unit does not have the same relative freedom of movement or access to prison mailboxes enjoyed by the general prison population. Those in the general population "could walk up to the lock box to file a grievance form or to the mailbox to have their mail sent out." By contrast, inmates held in Ten Block had no such ready access and were dependent on correction officers for filing grievances.[6]
*788 Even though inmates in Ten Block had no ready access to the means through which grievances were required to be filed, the regulations in effect in 2010 set forth no special process for them. Neither did the 2010 orientation manual.
With his access to the ordinary means of filing the grievance restricted, Davis gave the completed form to a correction officer for transmittal. The November 8, 2010 grievance never made it to its intended destination. When he had not heard from prison officials *402 regarding that grievance, Davis repeated the process again on November 30, 2010, filing a new grievance form and keeping a handwritten copy for himself. Davis averred, and therefore in the context of this appeal we must assume, that the November 30 grievance met the same fate.
Between December 2010 and January 2011, Davis filed sixteen additional grievances that did make their way to the appropriate prison officials. These were denied as untimely, because they were not filed within ten days of the incident.
Davis filed his judicial complaint in October, 2013. Over two years later, the defendants moved to dismiss the complaint based on Davis's failure to exhaust his administrative remedies. Because both parties submitted material outside the pleadings, the judge treated the defendants' motion as one for summary judgment. She eventually allowed that motion. Notably, the judge did not rest her conclusion that Davis failed to exhaust his administrative remedies on his failure to file a grievance within ten days of the incident (presumably because prison officials did not make the necessary forms available to him within that time frame). Instead, the judge relied solely on Davis's failure to submit a grievance form in accordance with the regulations, once he obtained the form on November 8, 2010. In other words, the judge appears to have accepted the defendants' position that -- although Davis's movement was restricted while he was in Ten Block -- he still could have requested permission from prison personnel to gain access to a drop box or to meet with prison officials for hand delivery, rather than handing the form to a correction officer. According to the judge, as a matter of law, Davis's failure to follow those potential paths doomed his grievances and thus his ability to file a judicial action.
Meanwhile, the Department of Correction since has changed its grievance regulations so as to recognize the reality faced by inmates held in units like Ten Block. Specifically, the governing regulation now allows -- indeed, requires -- inmates in such units to file their grievances in the very manner that Davis employed here. See 103 Code Mass. Regs. § 491.14(4) (2017) ("Inmates in segregated units or hospital units shall deliver their grievances to staff, who shall immediately forward the grievance(s) to the IGC").
Discussion. Davis argues that his failure to file a grievance within ten days of the incident should be excused, because prison officials refused to provide him the forms he needed to accomplish *403 that. As noted, the judge did not rely on Davis's failure to file a grievance within ten days as the basis for her conclusion that he did not exhaust his administrative remedies, and the defendants no longer press that claim.[7] In any event, Davis's argument on *789 this point plainly is correct. An inmate's duty to exhaust administrative remedies is limited to those remedies that are "available" to him; exhaustion is not required where prison officials "thwart inmates from taking advantage of a grievance process." Ross, 136 S.Ct. at 1859-1860. See Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) ("an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it").[8]
We turn then to whether Davis adequately exhausted his administrative procedures once prison officials made a grievance form available to him. It is undisputed that by giving the November 8, 2010 grievance to a correction officer for transmittal, Davis did not follow the letter of the then-existing regulation. The operative question is whether the procedures with which Davis failed to comply were "available" to him. Ross, 136 S.Ct. at 1859. The United States Supreme Court has laid out three different ways that a required procedure will be deemed "unavailable" to inmates: (1) when prison officials in fact are "unable or consistently unwilling to provide any relief to aggrieved inmates," (2) when the "administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use," and (3) when "prison administrators thwart inmates from taking advantage of a *404 grievance process through machination, misrepresentation, or intimidation." Id. at 1859-1860.
With these principles in place, and viewing the facts, as we must, in the light most favorable to Davis, we cannot reasonably say that the particular filing methods that Davis failed to follow were available to him. As an inmate in Ten Block, Davis lacked any ready access to the filing methods recognized by the regulations, and the manner in which he was supposed to comply was, at a minimum, less than clear.[9] Moreover, it appears undisputed that in order to comply in the specific manner required by the letter of the governing regulation then in place, Davis was dependent on the grace of the correction officers, e.g., by allowing him out of the cell to place a completed form in a lockbox.
*790 Where those same officers accepted Davis's completed November 8 grievance form for transmittal, a rational inmate in his place likely would have concluded that he adequately had complied with applicable filing requirements.[10] See Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available"), cited with approval in Ross, 136 S.Ct. at 1859-1860.
In sum, we disagree with the judge's ruling that, as a matter of law, Davis failed to exhaust his available administrative remedies *405 with respect to his November 8, 2010 grievance.[11] We therefore vacate the judgment in favor of the defendants and remand this case for further proceedings consistent with this opinion.
So ordered.

Pursuant to the regulations in effect in 2010, "[a] grievance shall be filed within ten working days of the actual incident or situation or within ten working days of the inmate's becoming aware of the incident of situation." 103 Code Mass. Regs. § 491.08(4) (2001).

The FPLRA requires exhaustion to the extent the inmate's claims are based on Federal law. The pertinent statutory language in the FPLRA reads as follows:
"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."
42 U.S.C. § 1997e(a). The parallel provision in G. L. c. 127, § 38F, requires exhaustion to the extent the inmate's claims are based on State law. The language of § 38F reads as follows:
"An inmate shall not file any claim that may be the subject of a grievance under section 38E unless the inmate has exhausted the administrative remedy established pursuant to said section 38E ; but the court may consider such claim if a final administrative resolution of a grievance filed pursuant to said section 38E has not been decided within 180 days from the date of filing such a grievance, or if the inmate can demonstrate to the court that exigent circumstances exist which, if delayed pursuant to the requirements of this section, would jeopardize the life or seriously impair the health of the inmate, or, for actions seeking equitable relief."
As the Supreme Judicial Court has noted, the State grievance law is modelled on the FPLRA. Longval, 434 Mass. at 719, 752 N.E.2d 674. Here, Davis brought claims under both Federal law and State law, so both the FPLRA and G. L. c. 127, § 38F, are implicated.

The current regulatory language differs from that used in the 2010 regulations -- "[i]nmates shall have unimpeded access to grievance and appeal forms. Forms shall be readily available to all inmates, regardless of housing unit" -- but the overarching message remains the same. 103 Code Mass. Regs. § 491.07(2) (2017).

According to Davis's second affidavit, while he was in Ten Block, he was confined to his cell for approximately twenty-three hours per day and was completely dependent "on the staff on duty ... to obtain access to any items [he] may need," including access to "[m]ail [d]elivery."

In his initial affidavit, Davis averred that because he was held in Ten Block, after he completed the grievance forms, he "would then have to submit [them] to either [the correctional programs officer or a correction officer] for delivery to its intended destination." In a second affidavit, Davis appears to acknowledge that in addition to obtaining a grievance form from a correctional programs officer, the "staff on duty" in Ten Block theoretically could have "provide[d] [him] access to the lock box to file a grievance form."

The defendants do assert, albeit in passing, that the November 8 grievance, which they do not concede Davis ever filed, was deficient for failing to request from prison officials an extension of the ten-day filing window. Under the circumstances of this case, in which the missing of the ten-day deadline was caused entirely by the defendants' refusal to make a grievance form available to him, we discern no merit in the defendants' approach.

As noted, the State grievance statute is modelled on the FPLRA. See note 3, supra. The exhaustion requirement in G. L. c. 127, § 38F, is somewhat more forgiving than its Federal counterpart, allowing some judicial actions to go forward in the absence of exhaustion. Even though, unlike the FPLRA, § 38F does not expressly refer to the exhaustion of "available" remedies, we consider it self-evident that the Legislature did not intend to require inmates to exhaust administrative remedies that are not available to them. Again, the defendants make no argument to the contrary. In addition, in interpreting § 38F, we discern no reason not to follow the United States Supreme Court's jurisprudence on what makes a grievance process unavailable to inmates under the FPLRA. See Ross, 136 S.Ct. at 1859-1860.

In fact, a handbook that was distributed only to inmates held in Ten Block created additional confusion with regard to how such inmates were supposed to file grievances. That handbook made reference to a separate approval process that inmates in Ten Block were required to complete before filing a grievance. Specifically, the Ten Block inmate handbook stated that "[a]n inmate must first complete an Inmate to Staff request form prior to submitting a formal grievance (see your [correctional programs officer] or tier officer for this form)." When asked at oral argument to explain how this additional requirement is supposed to work, counsel for the defendants forthrightly responded, "I have no idea." In any event, the defendants do not assert that any failure by Davis to file an "Inmate to Staff request form" constitutes a failure to exhaust.

The defendants point out that Davis made no showing that he requested, but was denied, the ability to file the form himself. That is true enough. However, it also is true that the defendants made no showing that the correction officer who accepted the form for transmittal did anything to dissuade Davis from forming the reasonable impression that this manner of filing was acceptable, and perhaps even preferable to allowing Davis out of his cell to follow the letter of the regulation.

Neither party has addressed the issue whether Davis necessarily waived any claims with respect to matters first raised in the November 30, 2010 grievance or subsequent grievances. We leave that issue to further proceedings.