NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-453

EDWARD G. WRIGHT

vs.

DEPARTMENT OF CORRECTION & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Edward G. Wright, is an inmate in the custody of the Department of Correction (DOC). In 2016, he commenced this action against the DOC and certain of its employees. As amended, his complaint sought declaratory and injunctive relief and money damages including for violations of 42 U.S.C. § 1983 and his rights under the Eighth Amendment to the United States Constitution. Central to Wright's claims is that, while he was held at both the Souza-Baranowski Correctional Center (SBCC) and the Massachusetts Correctional

---

[1] Douglas DeMoura, Michael Hobbs, John Delgiudice, Jose Montanez, Lois Russo, Steven Silva, Matthew Strauss, Thomas Turco, Third, Osvaldo Vidal, and Paul Visconti. The defendants are sued individually and in their official capacities.

Institution at Concord (MCI-Concord), the defendants failed to provide him with meals appropriate for his medical condition. A Superior Court judge granted summary judgment in favor of the defendants, and Wright appeals. We affirm.

Background. We set forth the facts based on the summary judgment record, construing them in the light most favorable to Wright, the nonmoving party. See Davis v. Commonwealth, 95 Mass. App. Ct. 398, 400 (2019).

Pursuant to DOC policy, meals to all inmates are provided through the use of a seasonally adjusted menu on a twenty-one day cycle that is reviewed by a registered dietician to ensure that the menu meets nutritional standards. 103 DOC §§ 760.01, 760.05 (2013). Each institution's food service director plans meals at least one week in advance following that menu. 103 DOC § 760.06. As to the serving and scheduling of meals, "Variations may be allowed based on weekend and holiday food service demands, provided basic nutritional goals are met." 103 DOC § 760.14(2).

As in effect at the time relevant here, DOC regulations required that medically prescribed therapeutic diets be consistent with national standards developed by the American Dietetic Association (ADA). 103 Code Mass. Regs. § 761.06(1) (2009). Menus for therapeutic diets are developed by dieticians and "should conform as closely as possible to [DOC]'s cycle

menu," consistent with ADA standards.  103 Code Mass. Regs. § 761.06(2).  The food service director at each institution must "ensure that the appropriate therapeutic diet is provided to the inmate and that the meal is of comparable palatability to regular meals."  103 Code Mass. Regs. § 761.07(3).

As to inmates' complaints about therapeutic diets, DOC regulations require institutions to develop informal measures for resolving them, and inmates are encouraged to communicate any problems with therapeutic diets to DOC staff to minimize the use of formal complaint procedures.[2]  103 Code Mass. Regs. § 761.09(1).  After informal efforts to resolve a complaint have been exhausted and an inmate remains dissatisfied, the inmate may file a formal complaint directed to the superintendent of the institution, to which the superintendent must respond within five business days.  103 Code Mass. Regs. § 761.09(2)(a)-(b). If dissatisfied with the superintendent's decision, the inmate has ten days after receipt of the decision to appeal to the deputy commissioner of the DOC's administrative services division.  103 Code Mass. Regs. § 761.09(2)(c).

---

[2] This differs from the process for most inmate grievances, which were governed at the time by 103 Code Mass. Regs. § 491.08(1) (2001); it stated, "recommendations concerning therapeutic diets are not grievable under 103 C[ode] M[ass.] R[egs.] [§] 491.00 as there is an existing complaint procedure pursuant to 103 C[ode] M[ass.] R[egs.] [§] 761.00."

In 2015, Wright was diagnosed as prediabetic. He opted not to take medication, choosing instead to control his blood sugar by losing weight. Medical staff placed him on a lower-calorie therapeutic diet. Soon after his diagnosis, Wright asserted that DOC staff were not providing him with meals compliant with his therapeutic diet. Wright complained about his meals almost daily, filing dozens of inmate therapeutic diet complaint forms with SBCC food services. His many complaints sounded two consistent themes: that he was served the same food as other inmates, and that he was served foods that did not match the foods listed on the preplanned menu. In response, DOC officials and staff repeatedly told Wright that he was receiving the correct therapeutic meals.

Between November 2015 and January 2016, Wright wrote four letters of complaint to the superintendent or deputy superintendent of SBCC. SBCC staff responded in writing to his complaints on December 22, 2015, and January 21, 2016. In addition, on December 2 and 7, 2015, Wright filed grievances complaining that he was improperly being served "regular meals" and "substituted food in direct contradiction of the ADA 2200 [calorie] diet meals I am to receive" and instead was served "the same meal as everyone else just with less food in [the] tray." On December 16, the institutional grievance coordinator for SBCC denied those grievances, stating, "According to the

4

approved DOC ADA Cycle menu, you are receiving all aspects of the approved ADA diet.  When a change is made that entire meal for that day is substituted."  The appellate record contains no documentation of a timely administrative appeal by Wright from those decisions of the SBCC superintendent's office or the institutional grievance coordinator.  See 103 Code Mass. Regs. § 761.09(2)(c) (requiring inmate to file administrative appeal within ten days of receipt of decision).  As discussed below, Wright asserts that he did file a timely administrative appeal.

On February 1, 2016, Wright filed this action in Superior Court, alleging in his initial complaint that he had filed a grievance about his improper meals, and his "grievance was denied and he appealed[.]  His appeal was not answered."  During the remainder of 2016, Wright filed dozens more therapeutic diet complaints, both at SBCC and MCI-Concord, where he was held between April 2016 and early January 2017, but he did not pursue administrative appeals from decisions on those complaints. Wright amended his Superior Court complaint to add as defendants several persons employed at MCI-Concord.

In mid-2016, Wright was diagnosed as diabetic.[3]  After Wright was transferred back to SBCC in January 2017, he

---

[3] The record before us contains no medical record documenting that diagnosis, but because we take the facts in the light most favorable to Wright, we accept it as true.

5

continued filing therapeutic diet complaints, to which the superintendent of SBCC responded. For the first time, Wright pursued an administrative appeal from a decision of the superintendent, as well as from subsequent adverse decisions in early 2017. Those administrative appeals were denied.

Wright amended his Superior Court complaint a second time, to include the period up to the date of the new amended complaint, August 6, 2017.[4] His amended complaint alleged that he had pursued administrative appeals before filing his initial complaint and again before filing his amended complaint, but "[t]he appeals went unanswered."

The defendants moved for summary judgment. See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002). After briefing by the parties and a hearing, the judge granted summary judgment in favor of the defendants, concluding that Wright did not exhaust his available administrative remedies before filing suit, his claims for damages failed to raise a genuine issue of fact as to the defendants' deliberate indifference, and his

---

[4] In July 2019, Wright moved to amend his complaint for a third time to encompass allegations about events that occurred after August 6, 2017, including at the Massachusetts Correctional Institution at Norfolk. That motion to amend was denied. To the extent that Wright includes in his brief, reply brief, and record appendix allegations about events beyond the scope of his complaint as amended, we disregard them.

6

claims for declaratory and injunctive relief were moot.  Wright timely appealed.

Discussion.  We review the judge's grant of summary judgment de novo.  See Carey v. Commissioner of Correction, 479 Mass. 367, 369 (2018).  As mentioned above, we construe the facts in the light most favorable to Wright as the nonmoving party.  See Davis, 95 Mass. App. Ct. at 400.  Even so, "the opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment" (citation omitted).  Cannata v. Berkshire Natural Resources Council, Inc., 73 Mass. App. Ct. 789, 792 (2009).  "[T]hat some facts are in dispute will not necessarily defeat a motion for summary judgment.  The point is that the disputed issue of fact must be material" (citation omitted).  Hudson v. Commissioner of Correction, 431 Mass. 1, 5 (2000).

> "[P]art[ies] moving for summary judgment in a case in which the opposing party has the burden of proof at trial [are] entitled to summary judgment if [they] demonstrate[], by reference to pleadings, other discovery, or affidavits, unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case" (quotation and citation omitted).

DuPont v. Commissioner of Correction, 448 Mass. 389, 397-398 (2007).

1.  Exhaustion of administrative remedies.  Wright argues that the judge erred in ruling that he failed to exhaust his

7

available administrative remedies before filing suit in Superior Court as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a).  See Davis, 95 Mass. App. Ct. at 399.  See also Ryan v. Pepe, 65 Mass. App. Ct. 833, 834-835 (2006) (discussing exhaustion requirement under PLRA and its Massachusetts counterpart, G. L. c. 127, §§ 38E-38H).  We conclude that Wright did not exhaust his administrative remedies before filing his complaint on February 1, 2016.[5]

Wright argues that he exhausted the available administrative remedies before filing his Superior Court complaint.  He points to 103 Code Mass. Regs. § 491.08(1), which governs most inmate grievances and provides that "recommendations concerning therapeutic diets are not grievable under 103 C[ode] M[ass.] R[egs.] [§] 491.00 as there is an existing complaint procedure pursuant to 103 C[ode] M[ass.] R[egs.] [§] 761.00."  The argument is unavailing.  Simply because therapeutic diet complaints are "not grievable" under § 491.00 does not mean that they are not subject to any administrative appeal process.  The regulation applicable to

---

[5] In her order granting summary judgment, the judge discussed "whether Wright's filing of an amended complaint after attempting to exhaust administrative remedies cures his initial failure to do so."  Wright does not raise that issue in either his brief or his reply brief, although the defendants discussed it in their brief.  In those circumstances, we "need not pass upon" the issue, Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).

therapeutic diet complaints plainly outlines the avenue of administrative appeal available to Wright:

> "An inmate dissatisfied with the superintendent's decision may appeal, within ten days of receipt of such decision, to the Deputy Commissioner of the Administrative Services Division, or his/her designee, who may take such action as deemed appropriate, including a referral of the matter to an outside consultant with specialized knowledge of the issues involved in providing access to therapeutic diets."

103 Code Mass. Regs. § 761.09(2)(c).

Indeed, the language of § 761.09(2)(c) outlining the administrative appeal process for therapeutic diet complaints underscores the importance of the exhaustion requirement. One way the DOC deputy commissioner may respond to such an administrative appeal is by referring the matter to an outside consultant with expertise in nutrition and the issues that arise in providing access to therapeutic diets. Unlike the DOC deputy commissioner, judges do not have access to the expertise necessary to determine if particular foods are appropriate for diabetics. See Ivey v. Commissioner of Correction, 88 Mass. App. Ct. 18, 25 (2015) (DOC has considerable discretion in adoption and implementation of prison policies). Cf. Dexter v. Superintendent, Massachusetts Correctional Inst., Concord, 88 Mass. App. Ct. 325, 326 (2015) (judge improperly failed to defer to DOC's interpretation of regulations about prisoner property).

Wright argues that he should be excused from the requirement that he exhaust his available administrative

9

remedies prior to filing his lawsuit, asserting that in November and December 2015 SBCC officials did not respond to his therapeutic diet complaints within five days as required by 103 Code Mass. Regs. § 761.09(2)(b).  See Robinson v. Superintendent Rockview SCI, 831 F.3d 148, 153-154 (3d Cir. 2016) (prison officials' failure to timely respond to inmate's complaints rendered administrative remedies unavailable).  We are not persuaded.  The record before us contains a letter to Wright dated January 21, 2016, from the SBCC superintendent's designee in response to Wright's complaints.  In addition, a letter from Wright to the SBCC superintendent acknowledged receipt of a December 22, 2015 letter from the superintendent "advising me that your Staff is providing all medical diet meals as prescribed."[6]  Those letters were decisions of the superintendent from which Wright could have pursued an administrative appeal under 103 Code Mass. Regs. § 761.09(2)(c) before filing suit. He did not.  In those circumstances, any dispute about the timeliness of the SBCC superintendent's responses was not "material."  Hudson, 431 Mass. at 5.

Alternatively, Wright argues that he did pursue an administrative appeal before filing his initial complaint.  In

---

[6] Wright has not included a copy of the superintendent's letter in the record appendix.  As appellant, it was his obligation to do so.  See Mass. R. A. P. 18 (a) (1) (A) (v), as appearing in 481 Mass. 1637 (2019).

10

support of their motion for summary judgment, the defendants presented an affidavit of an SBCC employee averring that DOC has no record of any such administrative appeal. Wright maintains that he pursued an administrative appeal from the December 16, 2015 denial of his grievance by filing a completed inmate grievance appeal form. However, that form is dated December 28, 2016, one year and twelve days after his grievance was denied. Wright asserts that the date was "an inadvertent clerical error," and in the light most favorable to him we should conclude that it was in fact timely filed. We note that the appeal form bears the date "12/28/16" in two places, typewritten at the top of the page and handwritten next to Wright's signature. Wright cannot defeat summary judgment with a bald assertion that the date on the appeal form was a clerical error. See Cannata, 73 Mass. App. Ct. at 792.

In any event, even if Wright had exhausted his administrative remedies, as discussed below, his claims would fail on their merits.

2. Eighth Amendment claims. Wright argues that the judge erred in allowing summary judgment on his claims against the individual defendants for damages under 42 U.S.C. § 1983 for violation of his constitutional rights.[7] Specifically, he argues

---

[7] In November 2017, another Superior Court judge dismissed Wright's § 1983 claims against DOC, concluding that "DOC is a

11

that the defendants' failures to provide him with appropriate therapeutic meals violated his Eighth Amendment right to be free from cruel and unusual punishment.[8]

A plaintiff is entitled to damages under 42 U.S.C. § 1983 if defendants (1) acted under color of State law and (2) deprived the plaintiff of "rights, privileges, or immunities," including those secured by the United States Constitution (citation omitted). Rosado v. Commissioner of Correction, 91 Mass. App. Ct. 547, 552 (2017). To establish a violation of the Eighth Amendment, an inmate must show that prison officials acted with "deliberate indifference" to the inmate's health and safety (citation omitted). Johnson v. Prentice, 144 S. Ct. 11, 14 (2023) (Jackson, J., dissenting from denial of cert.). See Lech v. Von Goeler, 92 F.4th 56, 74 (1st Cir. 2024). This requires a showing that prison officials were both "aware of facts from which the inference could be drawn

---

state agency, it is not a 'person' within the meaning of § 1983." Wright does not argue on appeal that the ruling was error, and so we do not consider that issue. See Mass. R. A. P. 16 (a) (9) (A).

[8] As amended, Wright's complaint also alleged that the defendants' conduct amounted to intentional infliction of emotional distress, retaliation in violation of the First Amendment, and violation of his rights under the due process clause of the Fourteenth Amendment. On appeal, Wright does not argue that the judge erred in allowing summary judgment for the defendants on those claims, and so we do not consider them. See Mass. R. A. P. 16 (a) (9) (A).

12

that a substantial risk of serious harm exists" and that they "dr[e]w th[at] inference" (citation omitted). Johnson, supra. See Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health"). The substantial risk of serious harm can be a risk of future harm if prison officials acted with deliberate indifference, see Jackson v. Commissioner of Correction, 39 Mass. App. Ct. 566, 568-569 (1995), as shown by proof that prison officials knew about that potential harm and "failed to take reasonable measures to abate it." Abdullah v. Secretary of Pub. Safety, 42 Mass. App. Ct. 387, 396 (1997).

The judge concluded that as to Wright's therapeutic meal complaints, "no reasonable trier of fact could find an Eighth Amendment violation" by the defendants. See DuPont, 448 Mass. at 398 ("no reasonable expectation of proving an essential element of th[e] [plaintiff]'s case" [citation omitted]). We agree. Contrary to Wright's argument, the defendants' serving him smaller portions of the "regular" meals did not constitute cruel and unusual punishment. The defendants presented evidence that the menu served to all inmates was "heart healthy." DOC regulations require that the therapeutic diet menus "should conform as closely as possible to [DOC]'s cycle menu," 103 Code Mass. Regs. § 761.06(2), and the meals should be "of comparable

13

palatability to regular meals," 103 Code Mass. Regs. § 761.07(3). In addition, if required by the type of therapeutic diet, food services staff "shall weigh or measure food portions." Id. Thus the regulations plainly anticipate that an inmate on a therapeutic diet may be served the same food as on the regular menu but in smaller portions. As the judge found, Wright "has not argued nor presented evidence that the relevant DOC regulations or policies are inadequate."

As for Wright's contention that the defendants failed to serve the meals exactly as set forth on the preplanned menu for his therapeutic diet, that did not constitute cruel and unusual punishment. Although the DOC regulations require food services at each institution to "follow the therapeutic menus developed by the dietician," they also permit "substitutions," if "documented and . . . in accordance with the substitution guidelines approved by the dieticians for therapeutic diets." 103 Code Mass. Regs. § 761.06(3). In support of their motion for summary judgment, the defendants presented evidence that they had repeatedly explained to Wright that they followed the substitution guidelines when any change was made to his therapeutic diet.[9] At the summary judgment stage, the judge

---

[9] The defendants did concede that on July 27, 2016, one of the defendants noticed that Wright had not received the correct therapeutic diet meal, and immediately replaced the meal. Wright alleges that the meal was not replaced, but did not

14

properly concluded that Wright had "no reasonable expectation of proving" that the defendants' substitution of meals amounted to cruel and unusual punishment (citation omitted). DuPont, 448 Mass. at 398. Cf. Braley v. Bates, 100 Mass. App. Ct. 259, 264 (2021) (complaint sufficed to survive motion to dismiss, where it alleged that DOC did not comply with food service policy as to substitution of meals).

Although Wright alleges that the defendants denied him therapeutic meals, he has provided no evidence beyond his own assertions that he received inappropriate meals, that the defendants acted with deliberate indifference, or that the defendants' conduct caused his diabetic condition to worsen. See Baptiste v. Executive Office of Health & Human Servs., 97 Mass. App. Ct. 110, 117 (2020), cert. denied, 141 S. Ct. 2626 (2021). In fact, Wright acknowledged that the defendants repeatedly assured him that they believed he was receiving the correct therapeutic meals in compliance with his health needs. He also acknowledged that he refused to provide the defendants with documentation as to meals he had received that he alleged were deficient. And the judge noted that Wright's canteen records showed that he bought numerous high-fat, high-sugar, and

present documentation of any complaint to the superintendent about that meal.

high-sodium foods.[10]  We discern no error in the judge's

conclusion that Wright's Eighth Amendment claims fail as a

matter of law.

3.  <u>Mootness of claims for injunctive and declaratory</u>

<u>relief</u>.  Wright argues that the judge erred in ruling that his

claims for declaratory and injunctive relief are moot because

none of the defendants work at the Massachusetts Correctional

Institution at Norfolk (MCI-Norfolk), where he is presently

held.  If a controversy is "no longer live or the parties lack a

legally cognizable interest in the outcome," the case is moot

(quotation and citation omitted).  <u>LaChance</u> v. <u>Commissioner of</u>

<u>Correction</u>, 475 Mass. 757, 766 (2016).  An inmate's claims for

injunctive and declaratory relief concerning prison conditions

are usually rendered moot by transfer or release, unless the

inmate can show that the challenged conditions are "capable of

repetition, while evading review" (quotations and citation

omitted).  <u>Id</u>. at 767.  See <u>Snell</u> v. <u>Neville</u>, 998 F.3d 474, 485

(1st Cir. 2021).

Wright's claims for injunctive and declaratory relief

against the individual defendants are moot because Wright has

been housed at MCI-Norfolk since 2019 and none of the individual

---

[10] Wright did not defeat summary judgment simply by
asserting that he did not eat the food he bought.  See <u>Cannata</u>,
73 Mass. App. Ct. at 792.

defendants work at that facility.[11]  See Snell, 998 F.3d at 486.

On appeal, Wright does not dispute that conclusion, but argues

that his claims are not moot because the alleged harm is not

only capable of repetition but is continuing where he is

presently held at MCI-Norfolk.  As a result of the denial of

Wright's motion to amend his complaint to include allegations

about events after August 2017, see note 4, supra, those claims

are not before us.

In any event, Wright did not show that he was entitled to

declaratory relief because he did not demonstrate that a

particular DOC administrative practice or procedure as to

therapeutic diets violated a law, rule, or regulation.  See

G. L. c. 231A, § 2.  See also Grady v. Commissioner of

Correction, 83 Mass. App. Ct. 126, 137 n.9 (2013).  Nor did

Wright demonstrate that he was entitled to injunctive relief

under the PLRA because, as discussed above, he has not

demonstrated a reasonable expectation of proving a violation of

his Eighth Amendment rights.  See Sosa v. Massachusetts Dep't of

Correction, 80 F.4th 15, 25 (1st Cir. 2023).

4.  Denial of Mass. R. Civ. P. 56 (f) motion.  Wright also

argues that before ruling on the summary judgment motion the

judge should have permitted him additional discovery pursuant to

---

[11] The judge found that "[t]here is no indication DOC
transferred Wright merely to moot his claims."

Mass. R. Civ. P. 56 (f), 365 Mass. 824 (1974).  By the time the defendants moved for summary judgment, the case had been pending in Superior Court for over six years, during which the parties extensively litigated discovery motions.  In response to the motion for summary judgment, Wright argued that additional "discovery is necessary to resolve undisputed facts that will determine the outcome of [s]ummary judgment."  The judge denied the rule 56 (f) motion, ruling that "these discovery disputes . . . have been fully litigated and decided."  Wright has not demonstrated, either in his rule 56 (f) motion or on appeal, "even a minimal showing warranting the requested discovery" (citation omitted).  Alphas Co. v. Kilduff, 72 Mass. App. Ct. 104, 108 (2008).  We discern no error in the judge's ruling.

Judgment affirmed.

By the Court (Henry, Grant & D'Angelo, JJ.[12]),

Clerk

Entered:  September 13, 2024.

---

[12] The panelists are listed in order of seniority.

18